# SUPREME COURT.

MARY BRONSON agt. OLIVER BRONSON, WILLET BRONSON, JOHN J. TOWNSEND et al.

*Appointment of executors of a will by petition to the court — removal of executor denied.*

The supreme court has the power to appoint such persons as they may see fit, executors of a will to fill the vacancies caused by the death of other executors.

It is in accordance with the practice of this court, and of the court of chancery, to make such appointment upon petition.

The executors, as trustees of a large estate, have the right, in its management, to charge the estate with the expenses of clerk hire and office rent. And it is not a breach of good faith for one of the executors, who has the custody of the books, to make such charges, although strenuously objected to by his co-trustees.

The refusal of a trustee having the custody of the books and papers of the estate, to deliver them up to his two co-trustees upon their joint demand, cannot be sustained. But this refusal is not such misconduct as to call for his removal from the trust.

The testator by his will and codicil provided, that the interest, rents, issues and profits of that portion of his estate which should be allotted to any one of his daughters, as directed in the fifth article of his will, should by said trustees be applied to the sole and separate use of each daughter respectively, for whom the same should be holden in trust, and should be exempt from the control and debts of her husband; and on receiving a receipt or discharge of any *cestui que trust*, executed under her hand to them, acknowledging a sum applied to her use, said trustees should be absolved from any further obligations, in any way or manner, to pay the same sum.

The testator nowhere, either in his will or in the codicil, provided for or made any distribution of any accumulations, and one of the questions to be determined is, to whom the accumulations belong.

*Held,* upon an examination of the will and codicil, that it was the intention of the testator, that the rents, issues and profits, of the portion allotted to any one of his daughters, should belong to her absolutely;

and that all the income derived from the plaintiff's portion of her father's estate, and which has been allowed to accumulate in the hands of the trustees, belongs to her, and she is entitled to claim the payment of the same to her by the trustees, upon presentation of a proper receipt therefor.

*Special Term, February,* 1874.

ISAAC BRONSON died on the 9th of May, 1838, leaving a last will and testament, dated June 8, 1829, and also a codicil thereto, dated March 3, 1838, and also a further codicil thereto, dated April 4, 1838.

The said will and codicils were each duly executed according to law, to pass real and personal estate, and were duly proved before the surrogate of the city and county of New York.

By the second clause of said will, the said Isaac Bronson constituted and appointed his wife, Anne, his sons, Oliver Bronson, Arthur Bronson and Frederick Bronson, and his son-in-law, Dr. Marinus Willet, trustees under his said will, and executors thereof, and gave, devised and bequeathed to them, and to the survivors of them, and to such person or persons as might be associated with them, or succeed them in said trust, all his estate, both real and personal.

The said Isaac Bronson further provided, that upon the decease of any of the trustees above named, the survivors should have power to appoint another person in his or her place or stead ; and he further provided, that the trustees so appointed, should be invested with the same power and interest which the deceased trustees had.

The said Isaac Bronson, after providing for the division and allotment of his estate to the several persons named in his will, directed that the portion allotted to each of his daughters should remain in the possession of said trustees, and be and continue their estate at law during the natural life of such daughter; and that the interest, rents, issues and profits, should be paid to her as they accrued during her

natural life, and that they should not be under the control of her husband or subject to his debts, but be to her sole and separate use; and on her decease, her portion should be conveyed and delivered to her issue, to be and belong to such issue forever.

By the codicil dated March 30, 1838, the said Isaac Bronson, after reciting that the codicil was made because he was desirous of making alterations in his said will, in order that the same might be more conformable to existing laws and for other reasons and purposes, provided that the interest, rents, issues and profits of that portion of his estate which should be allotted to any one of his daughters as directed in the fifth article of said will, should, by said trustees, be applied to the sole and separate use of each daughter respectively; and that on receiving a receipt or discharge of any *cestui que trust* executed under her hand to them, acknowledging a sum applied to her use, said trustees should be absolved from any further obligations in any way or manner to pay the same sum.

By the said codicil the said Isaac Bronson revoked the appointment of his wife, Anne Bronson, and of his son-in-law, Dr. Marinus Willet, as executors and trustees of his said will.

That, upon the probate of said will and codicils, letters testamentary were issued to the said Arthur Bronson, Frederick Bronson and Oliver Bronson, and they each qualified and undertook the execution of the trust of said will.

That the said Arthur Bronson died about the 18th of November, 1844; the surviving trustees did not, as required by said will, appoint a new trustee in his place.

That the plaintiff, Mary Bronson, is one of the children of Isaac Bronson, and there has been allotted to her, at the various divisions of her father's estate, as her portion, sums amounting in the aggregate to about $200,000.

That the said Mary Bronson has not received, nor has the same been applied to her use, the whole of rents, issues and

profits of her portion of her father's estate, but that the same have accumulated in the hands of the trustees until such accumulation amounts to a little over the sum of $200,000.

That Frederick Bronson, another of said executors and trustees, died about November 1, 1868, leaving Oliver Bronson the sole surviving trustee.

That in the year 1869, Oliver Bronson presented his petition to this court, asking that the defendants, Willet Bronson and John J. Townsend, should be associated with him as trustees in said trust. That the said plaintiff, Mary Bronson, consented, in writing, to the appointment of said Bronson and Townsend as such trustees.

This court thereupon appointed, by an order duly made, the said Willet Bronson and John J. Townsend as trustees under said will and codicils of Isaac Bronson, with said Oliver Bronson, in the place of said Arthur and Frederick Bronson, deceased; and since such appointment the said Willet Bronson and John J. Townsend have been acting as trustees with said Oliver Bronson.

That the said Oliver Bronson has, for a long series of years, on account of his health, been accustomed to reside, from the first of November to the first of June, in each year, in the state of Florida.

That Frederick Bronson, up to the time of his death, in 1868, had sole charge and control of the said trust estate, and the said Oliver Bronson did not at all participate in the administration of said trust.

That the said Frederick Bronson had an office in Wall street, at which the business of said trust was conducted, together with that of several other estates of which he had charge during his life. Frederick Bronson employed clerks and book-keepers for the purpose of keeping the accounts relating to said several estates; and from the year 1852, Mr. Elias L. Smith was the book-keeper so employed by Frederick Bronson. During the whole time of the administration of Frederick Bronson, the expenses for office rent and clerk hire,

were charged in certain proportions to the several estates of which he had charge.

That the said Frederick Bronson also charged five per cent for his commissions as trustee. That, during the whole of his administration of said trust, no objections were raised or suggested to said charges for office expenses and commissions. That, before and at and after his appointment, the said John J. Townsend agreed that none but legal charges should be made against said estate. That, after his said appointment, the said Townsend being the executor of Frederick Bronson, deceased, conducted the affairs of the trust under the will of Isaac Bronson, deceased, in the same manner and in the same office as they had been conducted by Frederick Bronson in his lifetime. That Mr. Smith had the charge of and kept the books of said estate as he had theretofore done.

That, in November, 1868, upon learning of the death of his brother, Oliver Bronson wrote to Mr. Smith, requesting him to continue in charge of the books of his sister's estate, as he had hitherto done, and expressing great satisfaction as to the manner in which he had attended for so many years to the business.

That, shortly after the appointment of said Townsend and Willet Bronson, disputes arose between them as to the legal right of the trustees to employ a clerk and charge his salary to the estate, Willet Bronson claiming that they had no such right, and Townsend insisting that it was a proper legal charge. Townsend, accordingly, in making up the accounts of the estate of Mary Bronson, charged, as had always theretofore been done, to said estate a certain proportion of the office rent in which the business of the estate was conducted, and also of the hire of the clerks who had charge of and kept the books.

The making of this charge produced warm and heated discussions between Townsend on the one side, and Oliver Bronson and Willet Bronson on the other.

That said disagreements, in December, 1869, culminated in

a demand by Willet Bronson that all the books and papers connected with said estate should be transferred to him, which demand was made with the sanction and approval of Oliver Bronson.

That, as early as the middle of December, 1869, the said Oliver Bronson and Willet Bronson resolved to eject Townsend from the trust, and consulted counsel in respect thereto. And upon being informed that an action for that purpose could not be brought by a co-trustee, Willet Bronson first communicated the differences which had arisen to the plaintiff, Mary Bronson, in order that she might be induced to bring a suit in her name, for the purpose of having Townsend removed. Townsend also claimed that all the accumulations which had not been applied by the trustees to the use of Mary Bronson formed a part of the trust estate, and was to be held by the trustees in the same manner as the principal. Oliver Bronson and Willet Bronson claimed, upon the other hand, that the whole of the income, including that which had accumulated, belonged absolutely to Mary Bronson; and, under their advice, Mary Bronson drew an order upon Townsend for the sum of $6,000, which Townsend refused to pay. That said order was drawn for the purpose of getting a refusal from Townsend, in order to make the same the basis of a charge against him.

That various other orders were also signed by Mary Bronson, at the solicitation of Willet Bronson, and for a like purpose.

In March, 1870, this action was commenced, for the purpose of procuring the removal of John J. Townsend from the trust.

*James Emott*, for Mary Bronson, plaintiff.

*Stephen P. Nash*, for defendants Oliver and Willet Bronson.

*Joseph Choate*, for defendant Townsend.

Bronson agt. Bronson.

VAN BRUNT, *J.* — The plaintiff in this action founds her claim to relief upon the following grounds :

First. That this court had no power to appoint Willet Bronson and John J. Townsend to fill the vacancies caused by the death of Arthur and Frederick Bronson.

Second. That, even if this court had the power to fill the vacancies caused by the death of Arthur and Frederick Bronson, upon a proper application being made to it for that purpose, the presentation of a petition did not authorize the exercise of that power; but that the application must be made by bill filed.

Third. That, even if the appointment of the defendants Willet Bronson and John J. Townsend is adjudged to be valid, the said Townsend has so misconducted himself in the matter of said trust, that he should be removed therefrom.

The said plaintiff also claims that it shall be adjudged in this action that all the rents, issues and profits which have arisen from that portion of the estate of her father, Isaac Bronson, which has been set apart as her share, and which she has allowed to accumulate in the hands of said trustees, belong absolutely to her, and do not form any part of the trust estate which the said trustees are entitled to hold.

The first question which it is necessary to consider is : Had this court the power to appoint the defendants Willet Bronson and John J. Townsend to fill the vacancies caused by the death of Arthur and Frederick Bronson?

It is a well established rule, and needs no authority for its support, that the court of chancery has a general jurisdiction, entirely outside of and beyond that conferred upon it by the Revised Statutes, in respect to all trusts and trust estates.

It is because of this general jurisdiction that the court of chancery was accustomed to appoint a trustee to execute a trust where there was no trustee named in the instrument creating the trust, who was willing to take upon himself its execution.

The familiar maxim being, that the court will never allow

a trust to fail for want of a trustee. The same principle has been invoked in respect to many powers which are usually conferred upon trustees.

In the case now under consideration it is to be observed that the devise to the trustees is peculiar in form. It is not to the trustees and to the survivors and survivor of them, but it is to the trustees and survivors of them, and to such person and persons as may be associated with them or succeed them in said trust.

The testator then gives to the survivors, upon the decease of any of the trustees, the power to appoint another person in his stead, and expressly invests such appointee with the same power and interest which the deceased trustee had.

It is further to be observed, that this power of appointment to fill any vacancy, caused by the death of any trustee, could only be exercised by all the surviving trustees; and, that if two trustees should die, without the vacancy caused by the death of the first being filled, the power of appointment by the surviving trustees was forever gone.

It would seem that these circumstances clearly indicate that it was the intention of the testator, that the trust should be kept full, and that it was the duty of Frederick and Oliver Bronson, to have filled at once the vacancy in the trust, caused by the death of Arthur Bronson.

This duty having been imposed upon Frederick and Oliver Bronson, and they having neglected to perform it, until, by the death of Frederick Bronson, it became impossible to do so in the manner prescribed by the testator, it devolved upon this court.

It is, however, claimed by the plaintiff that the power to appoint a trustee devolves upon the court, only when there is no trustee in existence who can execute the trust; and that such not being the condition of affairs in respect to this trust, Oliver Bronson, one of the trustees, still surviving and capable of executing the trust, nothing devolved upon this court.

But it is to be observed, that Hill on Trustees, at page 188,

lays down a different rule. He says: "That there is no doubt that where the donees of the power (referring to the power to appoint new trustees to fill vacancies) neglect to exercise it, on the occurrence of any vacancy, equity, under a proper application, will interpose, and itself make the appointment, although this will only be done where the number of trustees is so reduced as to render a new appointment actually necessary as where the number is lessened to one-third."

And again, at page 190, he says: "Whenever circumstances render it necessary or desirable to appoint new trustees, the court of equity, in the exercise of its inherent jurisdiction, will interpose upon proper application and make the appointment."

This jurisdiction exists, and will be equally enforced, whether the instrument creating the trust does or does not contain a power to appoint new trustees. No person interested could be advised to rest satisfied with the appointment of a new trustee under a power, unless the terms of the power clearly and distinctly authorized the appointment in the particular event which may have occurred. If there be the slightest doubt as to the validity of the application of the power to the case in question, the appointment, for the security of all parties, should be made only under the sanction of the court.

It would thus appear that the exercise of the power of appointment of new trustees by the court is not limited to those cases in which there is no trustee to execute the trust, but that the court has the right to exercise that power whenever the circumstances of each particular case seem to require its intervention, and necessarily the court itself is the sole judge as to when such an exigency has arisen. Therefore, it seems to me, that the court having determined that the circumstances of this case required that the vacant trusteeship should be filled, that decision could only be reviewed upon an appeal, taken in the proceeding in which it was made.

There is another ground upon which the defendants Willet

Bronson and John J. Townsend claim to support the validity of their appointment, and that is, that the plaintiff, Mary Bronson, consented thereto.

It has been shown, I think, that the court had the power to make the appointment, and even if the more orderly way of making such appointment would have been by bill, it is difficult to see how Mary Bronson, after having formally consented that the appointment should be made as it was made, can now retract that consent. She has admitted the right of the court to make the appointment, and by her consent to the appointment has testified to its advisability, and that it was proper that the court should act. Even if the court, except upon regular bill, would not have had the right to make this appointment, as far as she is concerned, she has waived that irregularity by her consent.

The next question which it is necessary to consider, is: Even if this court had the power to fill the vacancies caused by the deaths of Arthur and Frederick Bronson, could it do so upon petition?

It is claimed that the only power possessed by courts of equity, since the Revised Statutes, in the matter of appointment of trustees to fill vacancies, are those defined by the statute, and that no power is conferred by the statutes to do what was attempted here.

I have been unable to find any foundation for the claim that the concluding articles of the Revised Statutes on uses and trusts either did limit, or were intended to limit in any manner, the general undefined jurisdiction of the court of chancery in the matter of trusts. But rather they would seem to have been intended somewhat to enlarge the powers already existing in the court.

It is to be noticed that the phraseology of sections 69, 70 and 71 is somewhat peculiar. Section 69 authorizes the court of chancery to accept the resignation of any trustee upon petition. Section 70 provides that the court of chancery may remove any trustee upon the petition or bill of any person

interested in the execution of the trust. And section 71 provides that the chancellor shall have full power to appoint a new trustee in place of a trustee resigned or removed. There is no provision contained in the. statutes authorizing the appointment of any trustee in any case by petition. And the revisers never could have intended that a trustee could be removed summarily by petition, and that the chancellor should have no power to fill the vacancy in the same summary manner.

It is true that *In re Van Wyck* (1 *Barb. Ch. R.*, 565), the chancellor has said, independent of the statutes on the subject, the court of chancery had no power, upon mere petition, to discharge a trustee or to accept his resignation and appoint another in his place, without the consent of all the parties who are, or who, upon any future contingency, may be interested in the execution of the trust, and that the usual course of proceeding for the purpose of changing a trustee is by bill, to which all persons interested should be made parties, either actually or constructively. But this language would seem to be at variance with the actual practice in the court of chancery. In the case of *Hawley* agt. *Ross* (7 *Paige*, 103) the court of chancery did appoint a new trustee by petition.

In the case of *Millbank* agt. *Crane* (25 *How. Pr. R.*, 193), the identical question now presented for consideration seems to have been decided.

In that case, the sole surviving trustee having died, the defendants were appointed trustees in his place, upon petition, and that action was brought to procure their removal upon the ground, among others, that the court had no power to appoint new trustees upon petition. It was held in that case, that upon the death of a sole surviving trustee of an express trust, the trust vests in the supreme court, and it is the duty of the court to appoint another person as trustee to complete its execution.

The proper mode of appointment of the new trustee being necessarily summary, it was held to be by application by petition, and not by formal bill.

It was further held, that the notice or summons was not in the nature of process to bring the party into court, consequently the appointment of the new trustees was valid, even if it should be thought to be irregular or even imprudent and indiscreet to make it without formal notice to and summons of those interested.

Mr. justice ALLEN, in his opinion in that case, says: "The proceedings for the appointment of a new trustee, and the execution of the trust were necessarily summary and not by formal bill." An action, with all its delays and expense, would have been out of place. The duty to appoint a trustee is imperative, and the court had simply the exercise of a discretion in the selection of a suitable person and the taking the requisite security. The court, by the death of a sole trustee, became trustee, and the person appointed was its agent to carry out the trust under its direction. It may well be that, but for the statute authorizing a summary application by petition, the orderly way for the removal or change of a trustee would be by bill, but not so where there is no trustee, but one is to be appointed by the court to fill the vacancy. The proceeding by petition was regular and in the usual course.

It thus appears to have been expressly decided, in the above case, that, where the duty of appointing a trustee has devolved upon the supreme court, the appointment may be made summarily by petition, and not by bill; therefore, in the case at bar, it having been shown that the court had the power to fill the vacancies occasioned by the death of Arthur and Frederick Bronson, the appointment of the new trustees by petition was regular.

This brings us to the consideration of the third ground upon which the plaintiff has based her claim for relief as against the defendant Townsend, viz., that the said Townsend has so misconducted himself in the matter of said trust, that he should be removed therefrom.

In the consideration of this question, I shall not attempt to discuss, in detail, the particular charges made against Mr.

Townsend, but only their general character. It must, however, be borne in mind that this suit was not prompted by any difficulties which the plaintiff had had with Mr. Townsend, or by any embarrassments which she had experienced by reason of the manner in which the trust was administered; but that the suit was brought solely because of the differences which had arisen between Mr. Townsend and his co-trustees, and because of the representation made to her, by Oliver and Willet Bronson, that it was necessary that Townsend should be ejected from the trust, and that that could only be done by having a suit brought in her name.

These differences between Mr. Townsend and Oliver and Willet Bronson arose entirely because of the claim upon the part of Townsend of the right to charge the trust estate with office rent and clerk hire.

During the administration by Frederick Bronson of this trust he had been accustomed to charge to the estate, in addition to office rent and clerk hire, five per cent for his commissions, which was clearly illegal, as his charge for commissions was greatly in excess of the amount allowed by statute; and although this had been done for a long series of years without objection, Dr. Oliver Bronson, when the trust devolved upon him by reason of the death of Frederick Bronson, determined that it should not continue.

Accordingly, when the appointment of Willet Bronson and Mr. Townsend was first discussed, it was distinctly understood that none but legal charges should be made against the trust estate. With this understanding in respect to charges, in February, 1869, Willet Bronson and Mr. Townsend were appointed trustees. From the time of this appointment down to at least the summer of 1869, and perhaps later, the trust estate, with the assent of all the trustees, remained in the same office in which it had been administered by Frederick Bronson, and its books were kept by the same clerks, and the business generally was conducted in the same manner as had been done by him.

About this time Mr. Willet Bronson came to the conclusion, and so advised Dr. Oliver Bronson, that trustees had no power or authority to employ a clerk for the purpose of keeping the books of the estate at the expense of the estate; and he insisted that Mr. Townsend should not make any charge against the estate for clerk hire or office rent, basing this demand upon the alleged agreement of Mr. Townsend to make none but legal charges. Mr. Townsend, upon the other hand, claimed that the trustees of an estate, of the magnitude of this one, had the right to employ a clerk for the purpose of keeping the books; and he accordingly charged, as had been previously done by Frederick Bronson, a certain sum to the estate for clerk hire and office rent.

Mr. Willet Bronson construed the agreement made by Mr. Townsend prior to his appointment, that none but legal charges should be made against the estate, into an agreement that no charge should be made against the estate for its administration, except the legal commissions of the trustees; and hence objected strenuously to the charge for office rent and clerk hire, made by Mr. Townsend.

The differences which arose between Mr. Townsend and Willet Bronson culminated in a demand by Willet Bronson, concurred in by Dr. Oliver Bronson, for a surrender of the books of the trust to Mr. Willet Bronson, which was refused by Mr. Townsend.

The subsequent events and misunderstandings between Mr. Townsend and Mr. Willet Bronson, prior to the commencement of this action, I do not think it at all necessary to notice, because they arose entirely out of the position which Mr. Willet Bronson took in respect to the charge for office rent and clerk hire, and that which Mr. Townsend took in reference to the custody of the books, neither of which can be sustained.

It is very clear that Mr. Willet Bronson was mistaken in supposing that trustees of an express trust, of the magnitude of the one now under consideration, had no power to employ

a clerk at the expense of the trust estate (*Hawley* agt. *James*, 5 *Paige*, 318); and Mr. Townsend was correct in supposing that such an expense would be justifiable. Indeed, the greater part of the amount of the charges for office rent and clerk hire, which were so strenuously objected to by Dr. Oliver Bronson and Mr. Willet Bronson, and because of which Mr. Willet Bronson charged Mr. Townsend with dishonesty, were incurred with the express sanction of Dr. Bronson and Willet Bronson, and Mr. Townsend was not in the slightest degree guilty of any breach of faith in making them.

But I think that the refusal of Mr. Townsend to deliver the books and papers to Mr. Willet Bronson, upon the joint demand of Dr. Oliver Bronson and Mr. Willet Bronson, cannot be sustained.

It seems to me to be, beyond all question, the right of a majority of trustees to determine in the manual custody of which of them the books and papers of the estate shall remain, and the only way that any trustee could justify a refusal to obey the wishes of the majority in that respect, would be by showing that he had reasonable ground to suppose that the estate would suffer loss thereby. It was but natural that Mr. Townsend should, with great reluctance, see the administration of the estate taken from the hands which had administered it for so many years, to the satisfaction of all parties interested, including Dr. Bronson himself. And I can further see how that reluctance would be increased by the knowledge that the demand for the removal of the books and papers from the custody in which they had remained so many years was founded upon an erroneous idea of the law, in respect to the rights of trustees to employ a clerk and charge the expense thereof to the estate.

But none of these considerations can justify the refusal of Mr. Townsend to respect the wishes of a majority of the trustees. If one of the trustees was willing to do the clerical work of keeping the books without expense to the estate, and the majority of the trustees wished that he should do so, they

had clearly the right to have the trust administered in that way.

Although it has been charged in the complaint that Mr. Townsend has excluded Dr. Oliver Bronson and Mr. Willet Bronson from all control or management of the trust fund, and from all participation in the same, I do not think that the evidence sustains that allegation. Neither do I think that the refusal of Mr. Townsend to deliver to Willet Bronson the books, papers, &c., of the trust estate, although unjustifiable, furnishes sufficient ground for the removal of Mr. Townsend. Neither do I think that the differences which have arisen between the trustees are of such a nature as to prevent the due administration of the trust estate; these differences have arisen from a misconception by Willet Bronson of the legal powers of the trustees, and resulting in the assumption by Mr. Townsend of a position in respect to the manual custody of the books, papers, &c., of the estate, which cannot be defended.

The only remaining question to determine is: To whom do the accumulations of the trust estate belong?

In his original will, Isaac Bronson provided that the shares allotted to each of his daughters should remain in the possession of the trustees, and remain their estate at law during her natural life, and that the interest, rents, issues and profits only thereof should be paid to her, as they accrued, during her natural life; and that they should not be at the control of her husband, or subject to his debts, but be to her sole and separate use; and that, on her demise, her portion should be conveyed and delivered to her issue, to be and belong to such issue for ever.

In the codicil to his will, bearing date March 30, 1838, after reciting that the codicil was made because he was desirous of making alterations therein, that the same might be more conformable to existing laws, provided that the interest, rents, issues and profits of that portion of his estate which should be allotted to any one of his daughters, as directed in the

fifth article of his will, should, by said trustees, be applied to the sole and separate use of each daughter, respectively, for whom the same should be holden in trust, and should be exempt from the control and debts of her husband; and, on receiving a receipt or discharge of any *cestui que trust*, executed under her hand to them, acknowledging a sum applied to her use, said trustees should be absolved from any further obligations, in any way or manner, to pay the same sum.

In the next section he makes some further provision in case of the death of any of his daughters without issue, in respect to the division of her portion.

It will be observed that the testator has nowhere, either in his will or in the codicil thereto, provided for or made any distribution of any accumulations.

In his will he provided that the interest, rents, issues and profits of the portion which should be allotted to any one of his daughters should be paid to her as they should accrue, during her natural life, and then provides, in case of her decease, what shall be done with her portion, evidently referring to the portion of his estate which had been allotted to her.

This will was made prior to the time when the Revised Statutes went into effect. His codicil was made in the year 1838, some time after the Revised Statutes took effect; and, undoubtedly, Isaac Bronson had been advised that the provisions of his will were not in conformity with the requirements of the Revised Statutes, and he, therefore, made the codicil above named in order that the provisions of his will might be made to conform thereto.

If, therefore, upon an examination of the will and this codicil, we should come to the conclusion that it was the intention of the testator that the rents, issues and profits of the portion allotted to any one of his daughters should belong to her absolutely, such intention must control the determination of the question now under consideration.

I am unable to see how it is possible, after an examination

of the provisions of this will and codicil, to come to any con-
clusion other than that such was the testator's intention.   In
his will he provides that the rents, issues and profits of each
daughter's portion shall be paid to her as they accrue, and
upon her death he disposes of nothing but the portion of the
daughter, making no allusion whatever to accumulations; in
fact, there could be no accumulations if the terms of his will
were complied with, and the income of the daughter's portion
were paid over as they accrued, as the will directed.

An examination of the codicil, in respect to the daughter's
portion, will show that the trustees, although directed to apply
to the sole and separate use of each daughter the income of
her portion, were not expected to attend personally to such
application, because the receipt of each daughter, acknowledg-
ing a sum applied to her use, completely absolved the trustees
from any further obligations in respect to said sum.   And,
also, it will be observed that the codicil is equally silent with
the will as to any accumulations, although exceedingly precise
as to what shall be done with the original share or portion,
upon the decease of any of his daughters.

I am clearly of opinion, from these circumstances, that the
testator undoubtedly intended that the whole of the income
of the portion of his estate allotted to each daughter should
belong absolutely to her, to be disposed of as she saw fit.

· It has been urged in this case that the evidence shows that
the plaintiff is of a weak mind and incapable of managing so
large a sum as had been allowed to accumulate; but the
answer to the suggestion is, that our statutes have provided
but one way in which a person can be deprived of the manage-
ment of his property, and this court has no power or author-
ity to pass upon the question of the ability of the plaintiff to
manage her affairs.   I think, therefore, that the sums which
have been allowed to accumulate in the hands of the trustees,
of the income of her portion of her father's estate, belong
absolutely to her, and form no part of the trust estate, and
that she is entitled to receive the same upon presenting to

the trustees a receipt in form prescribed by Isaac Bronson in the first codicil to his will.

The conclusions, therefore, to which I have come, upon the questions submitted to me for decision, are :

First. That the supreme court had the power to appoint such persons as they saw fit to fill the vacancies caused by the death of Arthur and Frederick Bronson.

Second. That it was in accordance with the practice of this court, and of the court of chancery, to make such appointment upon petition.

Third. That Mr. Townsend has not been guilty of such misconduct as calls for his removal from the trust.

Fourth. That all the income derived from the plaintiff's portion of her father's estate, and which has been allowed to accumulate in the hands of the trustees, belongs to her, and she is entitled to claim the payment of the same to her by the trustees, upon presentation of a proper receipt therefor.

Judgment is ordered accordingly.