| 85 | 79 |
| 88 | 94 |

INHABITANTS OF ANSON, and others, PETITIONERS FOR THE
APPOINTMENT OF TRUSTEES UNDER MORTGAGE OF
SOMERSET RAILROAD COMPANY.

Kennebec.    Opinion August 13, 1892.

*Equity. Parties. Trustee. Mortgage. Railroad. R. S., c. 51, § § 85, 86;
c 68, § § 5, 6; R. S., 1871, c. 51, § § 47, 48, 70; Stat. 1878, c. 8.*

Upon a proceeding in equity for the appointment of trustees under a mortgage
made by the Somerset Railroad Company, July 1, 1871, two of the three
original trustees having deceased, and there being no provision in the
mortgage for the appointment of new trustees, *the court holds* as follows :

An express trust validly created shall not fail for the want of a trustee; and
the power of the court over the removal and appointment of trustees inde-
pendently of any statute authority, or any directions in the instrument of
trust, is well established.

The special provisions of our statutes respecting the election of trustees, being
cumulative and not restrictive, must be regarded merely as auxiliary regu-
lations designed to aid the court in the discharge of its duty, and to facilitate
the action of bondholders who may desire to co-operate in securing a more
efficient execution of the trust.    These provisions are not designed to pro-
hibit bondholders from directly invoking the aid of the equity court in
behalf of themselves and others entitled to the protection of the same
security.

The power of the court to make such appointment is not defeated by the for-
mation of a new corporation, under R. S., c. 51, by a majority of the bondhold-
ers, who have exchanged their bonds for stock in the new corporation; nor
by a foreclosure, promoted by the bondholders, the trustees not being parties
thereto, and a sale of the equity of redemption on execution to the new
corporation; nor by the creation of a new debt, secured by mortgage, for
the extension of the road; nor by estoppel through laches and because a
majority of the bonds was represented at the organization of the new
corporation.

In this proceeding, the court will not consider the validity of the alleged
foreclosure, nor the question of estoppel; or determine the relative equities
between the outstanding bonds and those surrendered for stock; or the
status of the new corporation and its new issue of bonds.

*Held, also,* that the original mortgagor and the surviving trustee are necessary
parties.

ON REPORT.

The facts are sufficiently stated in the opinion.

*D. D. Stewart, N. and H. B. Cleaves,* and *H. M. Heath,* for
petitioners.

Counsel argued :

(1.) That the attempted foreclosure by bill in equity is void, both as against the trustees under the mortgage of July 1, 1871, and as against the original mortgagors, the Somerset Railroad Company. (2.) That it is void as to all bondholders who have never cancelled and surrendered their bonds and converted them into stock of the new company. (3.) That it is void as to all stockholders of the Somerset Railroad Company who have taken neither stock nor bonds of the new company. (4.) That the mortgage of July 1, 1871, remains in full force as a first lien for securing the payment of all bonds originally secured by it, and still outstanding and uncancelled. (5.) That the new corporation, so far as its formation depends upon the alleged foreclosure by the bill in equity, has no legal existence. (6.) That if it has any legal existence, either under any other provisions of the statute, or as a *de facto* company, it holds, at most, only the right of redeeming the mortgage of July 1, 1871 ; and must of course pay the bonds still outstanding secured by that mortgage. And whether it holds that right depends upon the legality of the sale of the equity on July 8, 1884. (7.) That the new corporation has never acquired the legal title vested in the trustees under the mortgage of July 1, 1871, and could not. There is no conveyance from those trustees, *Stratton* v. *E. & N. A. Ry.* 74 Maine, 426. That the act of March 11, 1887, was as ineffectual to transfer that title as the proceedings under the bill in equity—both being equally unconstitutional and void ; and no other mode of acquiring it is pretended.

The Somerset Railway do not connect themselves with the title of the trustees under the mortgage of July 1, 1871, except by virtue of the act of the legislature of March 11, 1887. No man's property can be transferred to another by an act of the legislature. *Dartmouth College* v. *Woodward*, 4 Wheat. 518 ; *Trustees of New Gloucester* v. *Bradbury*, 2 Fairf. 118 ; *Knapp* v. *Railroad Co.* 20 Wall. 122, 123 ; *Denny* v. *Mattoon*, 2 Allen, 380-381 ; *Railroad Co.* v. *Elliot*, 52 N. H. 387.

Even the act of March 11, 1887, did not profess to apply unless there had been a legal foreclosure of the mortgage.

The vested priority of a mortgagee is beyond the power of the mortgagor or the legislature to disturb. *Toledo R. R. Co.* v. *Hamilton*, 134 U. S. 296. In *Smith* v. *Green*, 41 Fed. Rep. 455, it was held that no subsequent act of the legislature can affect or change the rights acquired under a mortgage according to the laws then existing. That the law as it stood when the mortgage was made must be followed—not that in force at the time of the foreclosure. Same doctrine in 2 Jones on Mort. § § 1821 to 1827 ; *Hillebert* v. *Porter*, 38 Minn. 499 ; *Champion* v. *Hinkle*, 45 N. J. Eq. 162 ; *Hoffman* v. *Quincy*, 4 Wall. 552 ; *Cargill* v. *Power*, 1 Mich. 369 ; *Edwards* v. *Kearzey*, 96 U. S. 608.

A mortgagee being the trustee in the mortgage, and as such the holder of the legal title, is an indispensable party to a suit for foreclosure. *Hambrick* v. *Russell*, 86 Ala. 199.

The objection is available at any time and in any form. S. P. : *Robertson* v. *Carson*, 19 Wall. 106 ; *Hidden* v. *Hidden*, 103 Mass. 59 ; *Clark* v. *Reyburn*, 8 Wall. 318 ; *Pierce* v. *Emery*, 32 N. H. 522, 523 ; *Sturgess* v. *Knapp*, 31 Vt. 53 ; *Secor* v. *Singleton*, 41 Fed. Rep. 728.

The alleged decree of foreclosure does not determine the amount to be paid by the Somerset Railroad Company in order to redeem. It is for that reason also fatally defective. *Chicago R. R. Co.* v. *Fosdick*, 106 U. S. 71 ; *Clark* v. *Reyburn*, 8 Wall. 318.

If it is contended that the bonds of the town of Anson were used in the formation of the new company, the reply is that no authority was ever given by the town to so use them. And the selectmen had no authority by virtue of their office to so use them. Nothing less than the vote of the town could confer it. *Willard* v. *Newburyport*, 12 Pick. 227 ; *Goff* v. *Rehoboth*, 12 Met. 26 ; *Walpole* v. *Gray*, 11 Allen, 150 ; 1 Dill. Mun. Corp. § 30, note and cases.

If it is contended that S. S. Thompson and W. H. Brown agreed to convert their bonds into stock of the new corporation, the answer is that it was an unexecuted agreement. They never

cancelled and surrendered their bonds, or received any certificates of stock. *Chaffee* v. *Middlesex R. R. Co.* 146 Mass. 238; *Miller* v. *Rutland R. R. Co.* 40 Vt. 399; *Richardson* v. *Noble*, 77 Maine, 390.

And the parties now owning the bonds purchased them in the market for value, without the slightest knowledge of such agreement, or that even Thompson ever owned the bonds. They thereby acquired a good title to them. *Miller* v. *Rutland R. R. Co.* 40 Vt. 399; *Galveston R. R.* v. *Cowdrey*, 11 Wall. 459, 478; *Shaw* v. *Norfolk Co. Railroad Co.* 16 Gray, 407; *Montclair* v. *Ramsdell*, 107 U. S. 147; *Knox* v. *Aspinwall*, 21 How. 539; *Mercer Co.* v. *Hackett*, 1 Wall. 83; *Bronson* v. *R. R. Co's*, 2 Wall. 283.

Bonds actually converted into stock of the new company and cancelled and surrendered to that company, are no longer existing obligations and secured under the mortgage of July 1, 1871. *Miller* v. *Rutland*, 40 Vt. 399; *Shaw* v. *Norfolk Railroad Co.* 16 Gray, 415; *Poland* v. *R. R. Co.* 52 Vt. 145.

Respondents have no interest in questions arising under this petition, or any right or occasion to be heard. *Greene* v. *Borland*, 4 Met. 330, 332-3; *Bradstreet* v. *Butterfield*, 129 Mass. 340, 341-2. Pierce, surviving trustee, not a necessary party. *Pillsbury* v. *E. & N. A. Ry. Co.* 69 Maine, 394.

Counsel also cited: *Att'y Gen'l* v. *Barbour*, 121 Mass. 568, 570-1-2-3; *In re Eastern Railroad Co. Lawrence, Pet'r*, 120 Mass. 412; 1 Perry Trusts, § 294; Hill Trustees, pp. 49, 190-1; 2 Story Eq. § 1287; *Red Rock* v. *Henry*, 106 U. S. 596; *Bainbridge* v. *Blair*, 1 Beav. 495; *Miller* v. *Knight*, 1 Keen, 129; *Wood* v. *Brown*, 34 N. Y. 341; *Gooch* v. *Stephenson*, 13 Maine, 371; *K. & P. R. R. Co.* v. *P. & K. R. R. Co.* 59 Maine, 9.

*Webb, Johnson and Webb*, for Somerset Railway and its trustees.

Mortgage of July 1, 1871, is *functus officio*. Defendant's right to appear (*Hamlin* v. *E. & N. A. R. Co.* 72 Maine, 83). May be obliged to yield possession of extension as well as old road. Demurrer should be sustained. 1 Pom. Eq. §§ 114, 115,

232, and cases cited.   Pierce should be made a party.   He represents all the *cestuis que trustent.*   Bondholders should under R. S., c. 51, § 85, elect trustees to fill vacancies.   *In re Bond-holders of Y. & C. R. R. Co.* 50 Maine, 552 ; *Pillsbury* v. *R. R.* 69 Maine, 394.   Petitioners estopped by decree in foreclosure suit.   Act of 1877, c. 151 (R. S., c. 51, § 94), and c. 103 of 1887 are valid and constitututional.   *Coffin* v. *Rich,* 45 Maine, 507 ; *K. & P. R. R. Co.* v. *P. & K. R. R. Co.* 59 Maine, 10 ; *Berry* v. *Clary,* 77 Maine, 482 ; *Phinney* v. *Phinney,* 81 Maine, 450 ; *Bambach* v. *Bade,* 9 Wis. 559, (76 Am. Dec. 283) ; *Bronson* v. *Kinzie,* 1 How. 311 ; *Holloway* v. *Sherman,* 12 Iowa, 282 (79 Am. Dec. 537,) ; *Griffin* v. *McKenzie,* 50 Am. Dec. 389.

Estoppel by laches : The new corporation, the Somerset Railway, was organized in 1883, and in 1888, issued its bonds to the amount of $225,000, and appointed trustees, who accepted the trust, and the bonds so issued were sold in the market and are held by individuals and savings banks in the state of Maine, and the proceeds thereof have been applied to the building of the seven and one-half miles of extension from Carratunk Falls to Bingham ; and this at the instance, knowledge, consent and co-operation of all the bonds represented by the petitioners, except $18,000.

The petitioners stood by from the time of the organization of the Somerset Railway in 1883 until after it had issued its bonds, and until 1890, and saw and assisted the new company in its formation and knew it was making contracts and doing business and running its railroad and issuing its bonds, and building with the proceeds thereof an extension ; and these petitioners have slept so long upon their rights that they cannot now object to the validity of the organization and the foreclosure of the old mortgage of 1871.

The bonds described in the plaintiff's petition, (excepting $18,000) participated in the foreclosure of the old mortgage and the organization of the new company and in the issuing of the bonds by the Somerset Railway, and they are now estopped to deny the validity of the foreclosure.   They are estopped *en pais.* *Briggs* v. *Hodgdon,* 78 Maine, 514 ; *Phillips* v. *Moore,* 71

Maine, 78; *Caswell* v. *Fuller*, 77 Maine, 105; *Allen* v. *Goodnow*, 71 Maine, 420; *Grant* v. *Carver*, 75 Maine, 524.

The general rule is that a party will be concluded from denying his own acts or admissions which were expressly designed to influence the conduct of another, and did so influence it, and when such denial will operate to the injury of another. *Piper* v. *Gilmore*, 49 Maine, 149; *Wood* v. *Pennell*, 51 Maine, 52; *Stanwood* v. *McLellan*, 48 Maine, 275; *White Mountain Bank* v. *West*, 46 Maine, 15.

These same bonds held by Thompson, $28,800, by Anson, $27,500, and by Brown, $4,100, attended a meeting on the 15th of August, 1883, of the holders of said bonds to see if the holders of said bonds would determine to form a new corporation as provided by law; to adopt a code of by-laws for such corporation; to elect a board of directors for such corporation; and at a legal meeting they did so vote to form a new corporation and issued by-laws. They voted that the officers of the new corporation be instructed to take possession of the railroad and other mortgaged property on the first day of September, 1883, and thereafter to operate said railroad for the benefit of this new corporation; and that the directors be authorized and requested to purchase the equity of redemption of the old Somerset Railroad Company and to take a conveyance thereof to this new corporation, and this was done; they voted to take the necessary action to conform the organization of the company to the foreclosure of the mortgage securing the bonds upon which said corporation was formed, and to fix the capital stock, and to repeal the old code of by-laws and to adopt a new code; and instructed the directors of the new Somerset Railway to extend its road from Anson to Bingham and to issue its bonds. The bonds of Anson, Brown and Thompson participated in these proceedings.

It is idle for these petitioners to claim that they had no knowledge that these bonds had participated in the new organization, because when they bought them in 1890 the coupons had matured and they were loaded down with overdue coupons. The inhabitants of Anson signed the petition for the meeting and then voted for it.

When the Somerset Railway mortgaged its property to trustees, that mortgage was authorized by a stock vote and the most of the bonds held by the petitioners voted in favor of that mortgage.

These bonds are now held and owned by parties who in law, consented to the foreclosure, and the present bondholders took them with full notice of the fact. *Barnes* v. *C. M. & St. P. R. R.* 122 U. S. 1.

WHITEHOUSE, J.   This is a proceeding in equity asking the court to appoint trustees under a railroad mortgage to fill vacancies occasioned by the death of two of three trustees originally named in the deed.

July 1st, 1871, the Somerset Railroad Co. duly authorized an issue of bonds to the amount not exceeding $500,000 and made a mortgage to Lewis Pierce, Daniel Holland and Stephen D. Lindsey conveying to them or their successors in joint tenancy "the railroad of said company from its junction with the Maine Central Railroad in Waterville to its terminus in Solon,"  .   .   .  "with the franchise of said company and all its real estate and all its personal property of every nature used in connection with said railroad now possessed or to be hereafter acquired," in trust to secure the payments of its bonds and coupons thereunto annexed and for the benefit of all the holders thereof.   Thereupon the company actually issued its bonds to the amount of $450,000 payable in twenty years from July 1st, 1871, with interest at the rate of seven per cent per annum payable semi-annually according to the coupons attached to each bond.   The larger part of these bonds were sold by the company and the proceeds applied to the construction of its road.   The plaintiffs are purchasers and owners of these bonds to an aggregate amount of $78,100, and of coupons annexed in the payment of which the company has made default during the last twelve years amounting to $84,921.   It is expressly stipulated in the mortgage that the omission of the company to pay any of the bonds or coupons as they become due shall constitute a breach of the conditions of the deed.

But it appears that, since the execution of the mortgage and the purchase of the bonds by the plaintiffs, two of the trustees, namely, Stephen D. Lindsey and Daniel Holland, have deceased; and there being no provision in the mortgage for the appointment of new trustees, the plaintiffs bring this bill asking the court to exercise its general equity power and appoint suitable persons as trustees to fill the vacancy.

After notice of the pendency of the bill had been given to "all persons and corporations interested," a new corporation called "The Somerset Railway" appeared to object to the appointment of such trustees and being admitted as party defendant, demurred specially to the plaintiffs' bill on the ground, first, that Lewis Pierce, the survivor of the trustees, was not made a party to the bill and, second, because the bondholders did not elect new trustees to fill the vacancies as provided by law. This defendant also filed an answer representing that on the 1st day of April, 1883, the Somerset Railroad Co. the mortgagor named in the deed of July 1st, 1871, was insolvent and unable to meet its indebtedness as it matured and that it was hindered and delayed in the transaction of its business; that the holders of the bonds secured by the mortgage in question on which interest had been due and payable for more than three years prior to that time, to an amount exceeding one half of such bonds, on the 15th day of August, 1883, formed the new corporation called the Somerset Railway, composed of the holders of the bonds, in the manner provided by c. 51, R. S., and acts amendatory thereto; that the majority of the bonds were surrendered to the Somerset Railway in exchange for the stock of that corporation; that the mortgage described in the plaintiffs' bill was foreclosed by a decree of the Supreme Judicial Court, April 1, 1887, and the equity of redemption sold on execution and purchased by the defendant; and that the mortgage has therefore become *functus officio* and has ceased to be security for said bonds; that October 1, 1887, the new corporation created another bonded debt and issued its bonds to the amount of $225,000, secured by a mortgage of its road from Oakland to Bingham, the proceeds of which have been applied in constructing the extension of the road

from North Anson to Bingham. The trustees under the last named mortgage were also admitted as parties defendant and filed an answer in substance the same as that of the defendant railway company.

It is admitted that there was a breach of the condition of the mortgage of July 1, 1871, and that it was never foreclosed by the trustees. It is also uncontroverted that the new company was in fact organized under the name of "the Somerset Railway" and that since the date of its organization it has been in actual possession and management of the road and its rolling stock, receiving all the income from its operation.

The defendant also interposes the further objection that the plaintiffs are now equitably estopped to maintain this bill because they have been guilty of laches, and because a majority of the bonds owned by these plaintiffs were represented in the organization of the new corporation. But we are not required by the scope and purpose of this proceeding upon the evidence now before us to pass upon the legality of the alleged foreclosure, or to determine this question of estoppel, with respect to the numerous owners of the outstanding bonds. The court is now asked to appoint trustees for the benefit of all the bondholders, if any, who may be interested in the security promised by the first mortgage. There is no evidence that the holders of these bonds to the amount of $18,000, who are parties to the bill, ever participated in the scheme for reorganization, and no evidence that they had any knowledge of it until after it was consummated. The history of the remaining $40,000 which remain uncancelled in the hands of those not parties to the bill, is not fully disclosed by the evidence. For all that appears they may be still held by those who originally purchased them of the railroad company.

The rights of the different bondholders are not now to be distinguished; for all the facts which might have a tendency to create differences are not now before us, and any attempt to settle all the conflicting claims, suggested by the history of this enterprise, would be premature. We do not now undertake to declare the relative equities between the outstanding bonds and those which were surrendered and cancelled in exchange for the stock of the

new corporation, nor to decide the status of the new organization and its new issue of bonds.

The provisions of the mortgage manifestly contemplated joint action on the part of the trustees. They are expressly constituted the sole judges *prima facie* of the breach of the conditions of the mortgage. The majority are authorized to take action when it appears that the others had notice and declined to act; but as two of the trustees are dead, it is obvious that no measures can be taken by the board of trustees for the enforcement of this mortgage contract until these vacancies are filled. *Shaw* v. *Norfolk Co. R. R.* 5 Gray, 162.

But the defendant finally contends that, if the situation requires the appointment of trustees to fill these vacancies, the court has no authority to take action in the premises until the trustees have been elected by the bondholders at a meeting for that purpose called by the trustees, as provided by § § 47 and 48, c. 51, R. S., 1871 (§ § 85 and 86, c. 61, R. S., 1883). True, the mortgage itself contains no provision for filling a vacancy and the bondholders have not designated any trustees in the manner specified by this statute. But the pendency of this bill reminds us that the basis for the initial step toward such a meeting of the bondholders is now wanting. There are no trustees to call the meeting; therefore compliance with this statute is impracticable.

But the equity power of this court is not thus restricted respecting the appointment of trustees under express trusts. In addition to the general equity jurisdiction over trusts possessed by the court under general statutes existing at the date of the mortgage, § 70, c. 51, R. S., 1871, expressly confers jurisdiction over trustees under railroad mortgages. Still further by the act of 1878, c. 8 (R. S., c. 68, § 5), it is provided that, if in a deed of trust no adequate provision is made for supplying the vacancy, the Supreme Court shall appoint a new trustee to act alone or jointly with the others as the case may be. *Pillsbury* v. *E. & N. A. R. R.* 69 Maine, 397. It is a familiar principle of equity that an express trust validly created shall not fail for the want of a trustee; and the power of the court of equity over the removal and appointment of trustees independently of any statute author-

ity, or any directions in the instrument of trust, is well established. It is to be exercised with sound judicial discretion, with due regard to the interests of all the beneficiaries and the effectual performance of the trust.   2 Pom. Eq. § § 1086 and 1087.   "The appointment of new trustees," says Judge Story, "is an ordinary remedy enforced by courts of equity in all cases where there is a failure of suitable trustees to perform the trusts." 2 Story Eq. § 1287.   In the exercise of its inherent jurisdiction the court will interpose upon proper application and make the appointment whenever necessary or desirable.   "The jurisdiction exists and will be equally enforced whether the instrument creating the trust does or does not contain a power to appoint new trustees." Hill on Trustees, 190 and 191.

The special provisions of our statutes, respecting the election of trustees, must be regarded merely as auxiliary regulations designed to aid the court in the discharge of its duty and to facilitate the action of the bondholders who may desire to co-operate to secure a more efficient execution of the trust. They were not designed to prohibit any bondholder from directly invoking the aid of the court of equity in behalf of himself and others entitled to the protection of the same security.   For it is well settled by all the authorities that, under some circumstances, a suit may be instituted by one for himself and others in like condition for an object common to them all.   *Mason* v. *York & C. R. R. Co.* 52 Maine, 107, and cases cited; *March* v. *Eastern R. R.* 40 N. H. 556.   And this, although the mortgage in express terms prohibits the trustees from attempting to foreclose except upon the written request of one half in amount of the bondholders.   *First National Ins. Co.* v. *Salisbury*, 130 Mass. 303 ; *Alexander* v. *C. R. R. Co.* 3 Dill. 487 ; Jones on Corp. Bonds and Nego. Secu. § § 389 to 392 and cases cited.   See also, *Guaranty Co.* v. *R. R. Co.* 139 U. S. 137.   The statute invoked by the defendant is cumulative and not prohibitory or restrictive.

It will be remembered that there is no provision in this mortgage which prohibits any bondholder from enforcing his rights according to the usual course of equity proceedings. There is nothing in the mortgage authorizing a majority of the

bondholders to act for the minority in matters respecting the mortgage.

The plaintiffs are accordingly entitled to the intervention of the equity powers of this court for the appointment of new trustees as prayed for. "But the appointment of a new trustee is not complete till the property is vested in him; therefore a court usually embraces, in the decree appointing a new trustee, a direction for a proper conveyance to be executed to him." Perry on Trusts, § 284. And § 6, c. 68, R. S., and § 85, c. 51, R. S., expressly authorize the court to make and enforce any decrees necessary for the transfer of the trust property to the new trustee. In view of this duty to execute a proper conveyance to his co-trustee, and to co-operate with him in the performance of the trust, we think it would be more in harmony with the familiar principles of equity pleading if Lewis Pierce, the surviving trustee, should become a party to this bill; jointly with the plaintiffs, if he prefer; otherwise he should be made a party defendant. It is also the opinion of the court that the bill should be amended by making the original mortgagor a party defendant.

> *Case remanded; bill to be dismissed unless amended in accordance with this opinion.*

PETERS, C. J., WALTON, VIRGIN, LIBBEY and FOSTER, JJ., concurred.