Strafford, }
Oct. 3, 1905. }

BARKER *&amp; a. v.* BARKER *&amp; a.*

The superior court has jurisdiction to remove trustees who become unsuitable for the proper execution of the trust.

Trustees whose relations to their co-trustees or the beneficiaries are such as to interfere with the proper management of the estate may be regarded as unsuitable and may be removed.

A court of equity may reduce the number of trustees from that designated by the creator of the trust, when, by reason of changed conditions in the estate, such action is necessary to effectuate the purpose for which the trust was established.

A member of a board of trustees is not entitled to pass upon questions involving an exercise of official discretion, in which he is directly interested as a beneficiary.

PETITION, praying for the appointment of trustees to fill vacancies caused by the resignation of four of the seven members previously appointed upon the board of trustees created by the will of Hiram Barker, which is printed at length in *Edgerly* v. *Barker*, 66 N. H. 434. Charles B. Barker, one of the defendants and a member of the board of trustees, filed an answer admitting the existence of the vacancies in the board, but denying that there was any occasion for filling them. He offered to resign his trust, alleged that the number of trustees should be reduced to one in order to preserve the estate for the benefit of the parties interested therein, and prayed the appointment of a suitable person to execute the trust. The case was heard at the February term, 1905, of the superior court before *Wallace*, C. J., and *Peaslee*, J. It was ordered that the trustees then acting be removed and that a single trustee be appointed in their stead, and the plaintiffs excepted.

*Alfred S. Hayes* and *William S. Bangs* (both of Massachusetts), for the plaintiffs.

*Streeter &amp; Hollis*, for Charles B. Barker.

VOL. LXXIII.    23

*Elmer J. Smart*, for Clara B. Berry.

*George E. Cochrane*, guardian, *pro se.*

BINGHAM, J. We have here an estate which the testator understood when he made his will was worth $800,000, and which in the early years of the trust produced a net income of $20,000. In a period of eighteen years it has shrunk from one cause or another, including payments to trustees and appropriations to beneficiaries, to about $200,000, and now yields an income of less than $5,000 after deducting taxes and incidental expenses, but not including trustees' fees, miscellaneous expenses of management, and necessary repairs. The testator provided in his will for a board of six trustees, and that his son Hiram should be added to the number upon his complying with certain standards of sobriety and habits of living for a specified period. For the greater part of ten or eleven years prior to January 20, 1904, the trust was managed by seven trustees, and the sum paid annually for their services was $4,500 and expenses incurred in holding meetings of the board. The resignations of the four trustees who were not of the Barker family, having previously been tendered, were then accepted. Since that time the petitioners and the defendant Charles B. Barker have managed the trust. The petitioners ask for the appointment of four trustees to fill the vacancies. The defendant objects to the granting of the request, and asks that the present trustees be removed and that a single trustee be appointed to execute the trust. The latter request was granted in the superior court, subject to the petitioners' exception.

In addition to the estate having been greatly diminished during the existence of the trust, it is found that the only way to prevent its further dissipation is to provide for its administration by a single trustee; that the petitioners persist in attempting to make appropriations to beneficiaries that will in a comparatively short time exhaust the property; that they are not able to agree with the defendant as to the management of the estate and the sums to be appropriated to beneficiaries; that their further continuance as trustees is opposed to the best interests of the estate and the other beneficiaries; that competent trustees cannot be procured to serve with the Barker trustees for $500 a year, or any reasonable fee; that it is impossible to procure competent trustees to act for a less sum than $500 a year; that if a board of seven is maintained and such payments are made, the beneficiaries will be practically deprived of the net income of the property, and the principal fund will ultimately be exhausted; and that in order to carry out the principal intention of the testator, namely, to provide for the sup-

port and maintenance of Hiram and his wife and Clara Barker Berry, and to preserve the bulk of the estate for the grandchildren, it is necessary that the Barker family no longer continue as trustees.

As we understand the case, the order of removal includes a finding that the present trustees are unsuitable to continue in the management of the trust. Such a finding is not inconsistent with the special findings above enumerated. This being so, and it being found that the only way to prevent the further dissipation of the estate is to provide for administering it by a single trustee, the question presented is whether under these circumstances the superior court, in the exercise of its equity powers, could legally remove the present trustees and make the order reducing the number from seven to one.

The petitioners concede that the superior court has full equity powers in all cases of trusts (P. S., c. 205, s. 1; *Walker* v. *Cheever*, 35 N. H. 339; *Wells* v. *Pierce*, 27 N. H. 503), but contend that the order of the court in this instance is not within the limits of those powers, and is unauthorized and illegal from the fact that it was the intention of the testator that seven trustees, one of whom was to be his son, should manage the trust; and that to remove the present board, of which the son is a member, and reduce the number to one, is in contravention of this known and expressed intent.

The defendant admits that, as a rule, in such matters the wish of the creator of the trust, when ascertained, is to be followed, but contends that the rule is subject to the qualification, that when it is shown to be necessary for the effectual performance of the trust that there should be a change in the number, because that fixed by the creator of the trust is excessive or insufficient, a court of equity has power to cause the number to be reduced or increased to meet the necessities of the case; and that if any or all of the trustees are unsuitable, it can order their removal, always being governed by a sound judicial discretion.

The latter view meets our approval. It cannot be doubted but that the superior court, as a court of equity, has the power to remove trustees who become unsuitable for the execution of a trust. Under such circumstances, power of removal is also conferred by statute upon the probate court. P. S., c. 198, s. 8. In this particular, the jurisdiction of the two courts is concurrent. *Bowditch* v. *Banuelos*, 1 Gray 220, 228, 229. It is the duty of a court of competent jurisdiction, upon the institution of proper proceedings before it and its being made to appear that trustees appointed to execute a trust are unsuitable, to remove them. *Adams* v. *Adams*, 64 N. H. 224. Trustees whose relations to their co-trustees or

the beneficiaries are such as to interfere with the proper management of the estate may be regarded as unsuitable and removed. *Wilson* v. *Wilson*, 145 Mass. 490; *Disbrow* v. *Disbrow*, 46 N. Y. App. Div. 111; Loring's Trustee's Handbook 20. An instance of this is when trustees unreasonably disagree with their co-trustees in matters involving their joint discretion. *Swale* v. *Swale*, 22 Beav. 584; *Stott* v. *Lord*, 31 L. J. Ch. 391; Loring's Trustee's Handbook 47. And while a court of equity is reluctant to change the number of trustees from that designated by the creator of the trust, yet it seems to be in accordance with reason and authority that it may do so when, by reason of changed conditions in the estate, the number designated by the creator has become excessive or insufficient, and it is necessary to reduce or increase the number in order to effectuate the execution of the trust. *Inhabitants of Anson, Pet'rs*, 85 Me. 79, 88, 89; *Force* v. *Force*, 57 Atl. Rep. 973; *Austin* v. *Austin*, 18 Neb. 306, 309; *Birch* v. *Cropper*, 2 DeG. & Sm. 255; *In re Dickinson's Trusts*, 1 Jur. N. S. 724; *Sitwell* v. *Heron*, 14 Jur. 848; *Letterstedt* v. *Broers*, 9 App. Cas. 371, 386; *In re New*, [1901] 2 Ch. 534; *In re Chetwynd's Settlement*, [1902] 1 Ch. 692; Lewin Tr. (11th ed.) 803; 2 Beach Tr., *s.* 387; 2 Sto. Eq. Jur., *s.* 1287; 3 Pom. Eq. Jur. (3d ed.), *ss.* 1086, 1087; 28 Am. & Eng. Enc. Law (2d ed.) 970.

In *Edgerly* v. *Barker*, 66 N. H. 434, 452, the court in construing the will said: "A dominant idea of the residuary clause and of the whole will is, that the testator's grandchildren shall have the bulk of his estate. Not less dominant or less manifest is his determination that C. and H. shall not have it. . . . In his mind, the main point evidently was the extent to which he disinherited C. and H., and put their children in their places. . . . After years of observation and reflection, his unchanged judgment was, that the welfare of his issue required an absolute provision for the comfort of C. and H. during their lives, a conditional appropriation of $30,000 for H., other special appropriations (including one for education), and a devise of the remainder to the grandchildren. In this manner and to this extent, he was convinced it was his duty to modify the operation of the statutory rule of distribution. His exercise of testamentary power to this end was his primary and leading purpose." The order of the superior court does not contravene this primary and leading purpose, for it is not probable the testator intended that if any or all of the six trustees designated in his will should subsequently become unsuitable, they should be continued in the trust; or that if Hiram was added to the board and became unsuitable for reasons other than those specified in the will, he should not be subject to removal the same as any other trustee would be for a like cause.

And it is equally improbable that he intended the number of trustees should not be reduced if, by reason of changed conditions in the estate, the number became excessive, so that it was impossible to effectuate his primary purpose without a reduction.

Another contention made by the petitioners is, that the order of the court deprives Hiram of the opportunity of passing upon the question whether he has complied with the condition imposed as to sobriety and good conduct, upon which the second and third instalments of the gift of $30,000 are predicated, and is in violation of the intention of the testator that he should be permitted to pass upon this question with the other trustees. We do not think the will provides that he should have the right to pass upon his own qualifications with the other trustees; and as we understand the law, he would not be entitled to pass upon questions in which he is directly interested as a beneficiary and involving an exercise of discretion, but that such questions should be passed upon by the other trustees alone. *Rogers* v. *Rogers*, 111 N. Y. 228, 234, 237; *Woodward* v. *James*, 115 N. Y. 346, 357.

*Exception overruled.*

All concurred.