SARAH A. ROGERS as Executrix, etc., Respondent, *v.* GEORGE W. ROGERS, Impleaded, etc., Appellant.

The fact that one of several testamentary trustees is one of the beneficiaries under the trust does not incapacitate him from acting as trustee. He can act freely as to the other beneficiaries and, as to himself, his co-trustees can exercise the control and judgment improper for him.

In case the other trustees decline to act, the court may either supply their place or take upon itself the execution of the trust so far as it ought not to be executed by said trustee and beneficiary.

The will of R. nominated his wife as executrix and four others as executors. It gave his estate to the executrix and executors in trust, to invest and pay to his wife during life, or until she should marry, so much of the income as might be necessary for the comfortable support of herself and the testator's mother, and the maintenance and education of the testator's children. In case the whole of such income should be insufficient for the purposes specified, the will authorized said trustees "to apply to that purpose so much of the principal sum invested as may be necessary to make up the deficiency." The testator left but little personal estate, and resort to the real estate became necessary to carry out the purposes of

the trust. *Held*, that the trustees had power, under and pursuant to orders of the court directing it, to borrow money for such purposes, and to mortgage the real estate to secure the same; that the court had power to make the orders and that, therefore, mortgages so executed were valid.

(Argued October 8, 1888; decided November 27, 1888.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made July 18, 1879, which affirmed a judgment of the Special Term herein. (*Mem.* of decision below, 18 Hun, 409.)

This action was brought by plaintiff, as executrix of the last will and testament of Patrick L. Rogers, deceased, for the purpose of obtaining a construction of his will in the particulars stated in the complaint, the substance of which, as well as the facts pertinent to the questions discussed, are set forth in the opinion.

The will, after providing for the payment of the testator's debts and funeral expenses, contained the following provisions:

"SECOND. All the rest, residue and remainder of my estate, property and effects of every nature or kind, which may remain after the payment of my just debts and funeral expenses, I give, devise and bequeath to my executrix and executors hereinafter named, or such of them as shall assume the execution of this, my will, the survivors and survivor, in trust, nevertheless to invest and keep the same invested, in such a manner as they may see fit until the distribution of my estate, as hereinafter provided, and to collect and receive the rents, income or profit thereof, and dispose of the same as follows:

"*First.* To pay to my beloved wife during her natural life, or until she shall marry again, or until the youngest of my living children shall attain the age of twenty-one years, whichever event shall first happen, so much of the income and profit of my estate as may be necessary for the comfortable support of herself and my mother, and the maintenance and education of my said children, and in case the whole of such income shall be insufficient for the support of my wife and mother and the maintenance and education of my children, or

such of them as may be minors, then, and in that case, I authorize my executors and executrix to apply to that purpose so much of the principal sum invested as may be necessary to make up the deficiency.

"*Second.* Upon the youngest of my living children attaining the age of twenty-one years, I direct my executors and executrix, in case my wife shall then be living and unmarried, to invest so much of my estate as may be necessary to produce an annuity of $1,000 per year, and to pay the same to my said wife during her lifetime, or until she shall marry again, for the support and maintenance of herself and my mother and such of my children, if any, who may need assistance. And to divide all the rest, residue and remainder of my estate equally among such of my children as shall then be living, but in case any of my children shall have died, leaving lawful issue him or her surviving, then to divide the same between such of my children as shall then be living, and the issue of any so deceased in such manner, that the child or children of one so deceased shall take the same share that his, her or their parent would have taken if living.

"*Third.* Upon the death or marriage of my said wife, whichever event may first happen, in case my youngest living child shall have then attained the age of twenty-one years, I direct my executors and executrix, after making a suitable provision for the support of my mother during her lifetime, to divide all the rest, residue and remainder of my estate which may then remain equally between such of my children as shall then be living, or in case either of my said children shall have died, leaving lawful issue, him or her surviving, then to divide the same between such child or children of mine as shall then be living, or the issue then living of any deceased child, in such manner that the child or children shall take the same share which his, her or their parent would have taken if then living.

"*Fourth.* In case the youngest of my living children shall not have attained the age of twenty-one years at the death or marriage of my said wife, then, and in that case, I direct my

executors and executrix to apply the said rents and income of my estate, or so much thereof as may be necessary for the purpose, to the support and maintenance of my mother during her lifetime, and the maintenance and education of my minor children until the youngest of my living children shall attain the age of twenty-one years, and upon the youngest of my living children attaining full age, to divide the whole, rest, residue and remainder of my estate, except so much as may be necessary for the support of my mother, between such of my children as shall then be living and the descendants of any who may have died leaving issue, in such . manner that the child or children of any deceased children shall take the same share which his, her or their parent would have taken if living.

" LASTLY. I here nominate, constitute and appoint my wife Sarah A. Rogers, executrix, and my friends Peter Murray, Samuel B. Barton and Charles Griffiths, all of the city and county of New York, merchants ; Daniel O'Connor of said city, builder, executors of this my last will and testament."

The further material facts are stated in the opinion.

*C. K. Corliss* for appellant. The executrix cannot be a trustee for herself. (*Magoffen* v. *Patton*, 3 Edw. Ch. 65, 68 ; *Coster* v. *Lorillard*, 14 Wend. 265, 354, 355, 380, 381 ; *Craig,* v. *Hone*, 2 Edw. 554 ; *Firemens' L. & T. Co.* v. *Carroll*, 5 Barb. 615, 616, 643, 652 ; *Bundy* v. *Bundy*, 38 N. Y. 417 ; *Wetmore* v. *Parker*, 52 id. 450, 459 ; *Amory* v. *Lord*, 9 id. 411.) Legacies dependent on a void trust fall with it. (*Hawley* v. *James*, 16 Wend. 174 ; *Arnold* v. *Gilbert*, 3 Sandf. Ch. 531 ; *Slocum* v. *Slocum*, 4 Edw. 613 ; *Jackson* v. *Jansen* 6 Johns. 73.) When a devise of lands in trust is void, the lands descend to the testator's heirs. (*Post* v. *Hover*, 33 N. Y. 598, 599 ; *Benedict* v. *Webb*, 98 id. 460, 466.) The power given to the trustee, " to invest and keep invested the trust estate," implies a power in trust to sell the real estate. (4 Kent's Com. 319 ; *Morton* v. *Morton*, 8 Barb. 18 ; *Dorland* v. *Dorland*, 2 id. 63 ; *Bogert* v. *Hertell*, 4 Hill, 492 ; *Devone* v. *Fanning*, 2 Johns. Ch. 252.) The duty of selling the real

property for the purpose of investment was required by the will and the law to be performed by the trustee immediately on the death of the testator. (*Stagg* v. *Jackson*, 1 N. Y. 212; *Meakings* v. *Cromwell*, 5 id. 136; *Savage* v. *Burnham*, 17 id. 569; *Dodge* v. *Pond*, 23 id. 69; *White* v. *Howard*, 46 id. 144; *Manice* v. *Manice*, 43 id. 372; *Lent* v. *Howard*, 89 id. 169; *Wells* v. *Wells*, 88 id. 331; *Kane* v. *Gott*, 24 Wend. 659; *Robert* v. *Cowing*, 89 N. Y. 239.) Land directed to be converted into personalty is, in equity, for all the valid purposes of the will, considered as the species of property into which it is directed to be converted. (*Meakings* v. *Cromwell*, 5 N. Y. 136; *Johnson* v. *Bennett*, 39 Barb. 237; *Savage* v. *Burnham*, 17 N. Y. 569; *White* v. *Howard*, 46 id. 162; *Shumway* v. *Harmon*, 6 T. & C. 626; *Shipman* v. *Rollins*, 98 N. Y. 311, 326.) All mortgagees who claim to hold their mortgages under this will are presumed to know the contents of the will, and are thus presumed to know that the executrix and pseudo trustee had no power under the will to execute such mortgages. (*Allen* v. *De Witt*, 3 N. Y. 284.) A power to sell and convey does not, in itself, confer a power to mortgage. (*Waldron* v. *McComb*, 1 Hill, 111; *Bloomer* v. *Waldron*, 3 id. 361; *Contant* v. *Peross*, 3 Barb. 128; *Cumming* v. *Williamson*, 1 Sandf. Ch. 17; *Allen* v. *De Witt*, 3 N. Y. 284; *A. Fire Ins. Co.* v. *Bay*, 4 id. 19.) The trust property cannot be charged by the trustee, except so far as he is authorized by the terms of the trust. (*L'Amoreaux* v. *Van Rensselaer*, 1 Barb. Ch. 34.) The will nowhere empowers either the trustee or the executrix to mortgage the realty, and, therefore, the court could not authorize Mrs. Rogers, as trustee, to execute the mortgages. (*Douglas* v. *Cruyer*, 80 N. Y. 15.) This clause of the will requires the executors and executrix to do acts, and to perform duties which cannot be done and performed without a trust. Under the second clause in the will the executors are trustees, and the estate vests in them as such by necessary implication. (*Leggett* v. *Perkins*, 2 N. Y. 297; *Craig* v. *Craig*, 3 Barb. Ch. 76; *Vail* v. *Vail*, 4 Paige, 317; *S. C.*, 7 Barb. 226; *Meakings* v.

*Cromwell*, 5 N. Y. 140, 141; *Leggett* v. *Hunter*, 19 id. 454;. *Knox* v. *Jones*, 47 id. 389.) Neither the trustees nor the beneficiaries, nor all united, could convey the property and thus destroy the trust. (3 R. S. 2176, 2183, §§ 14, 63, 65; *Cruger* v. *Jones*, 18 Barb. 467; *Lent* v. *Howard*, 89 N. Y. 181; *Douglas* v. *Cruger*, 80 id. 15.) If there was an equitable conversion the trust was a trust of personal property. (*Wells* v. *Wells*, 88 N. Y. 331; *Kane* v. *Gott*, 24 Wend. 659.) A trust of personal property suspends, during its continuance, the absolute ownership. (3 R. S. 2256, §§ 1, 2; *Everitt* v. *Everitt*, 29 N. Y. 39, 71, 72; *Smith* v. *Edward*, 88 id. 102; *Knox* v. *Jones*, 47 id. 390, 397; *Gott* v. *Cook*, 7 Paige, 521, 536; *Schettler* v. *Smith*, 41 N. Y. 328; *Shipman* v. *Rollins*, 98 id. 311; *Wells* v. *Wells*, 88 id. 332.) The provisions of the statute declaring that neither the trustee nor the beneficiary, in case of a trust of real estate, can alienate their respective interests and destroy the trust, have been held applicable to trusts of personal property. (*Lent* v. *Howard*, 89 N. Y. 181; *Graff* v. *Bonnett*, 31 id. 9, 13; *Williams* v. *Thorn*, 70 id. 270; *Gott* v. *Cook*, 7 Paige, 521, 536; *Cutting* v. *Cutting*, 86 N. Y. 546; 3 R. S. 2256, §§ 1, 2,; 2176, §§ 14, 15.) The trust is an entirety and cannot be held void in part and valid as to the balance, but it is void in *toto*. (*Amory* v. *Lord*, 9 N. Y. 403; *McSorely* v. *Wilson*, 4 Sandf. Ch. 515; *Field* v. *Field*, Id. 528; *Knox* v. *Jones*, 47 N. Y. 389; *Hawley* v. *James*, 16 Wend. 61, 167, 168; *Benedict* v. *Webb*, 98 id. 460, 466; *Shipman* v. *Rollins*, Id. 311, 330; *Holmes* v. *Mead*, 52 N. Y. 332, 345; *Irving* v. *De Kay*, 9 Paige, 523; *Colton* v. *Fox*, 67 N. Y. 348; *Woodruff* v. *Cook*, 61 id. 638.) The trust being void, the power to mortgage or sell (if any) necessarily fails with the trust. (*Hetzel* v. *Barber*, 69 N. Y. 13; *Jackson* v. *Jansen*, 6 Johns. 73; *Sharpstein* v. *Tillou*, 3 Cow. 651; *Benedict* v. *Webb*, 98 N. Y. 460, 467; *Brewer* v. *Brewer*, 11 Hun, 147, 153; 4 Edw. Ch. 613.) The written consent of the adult defendants to the entry of the order of March 30, 1874, is evidence of a fraudulent collusion between them and

the pretended trustee, the plaintiff, to deprive the infant defendants of their title to the real property inherited by them from their father. (*Wright* v. *Miller*, 8 N. Y. 9; *S. C.*, 1 Sandf. Ch. 103; *Litchfield* v. *Burwell*, 5 How. 341.) Even if the written consent was necessary from the adult defendants, then it was necessary from the infant defendants. But the guardian *ad litem* could give no such consent. (*Litchfield* v. *Burwell*, 5 How. 341.) Even if the written consent of the adult beneficiaries that the order dated March 30, 1874, might be made and entered by the court, be not evidence of fraudulent collusion, it does not render the order valid. (*Boerum* v. *Schenck*, 41 N. Y. 192, 193; *Douglas* v. *Cruger*, 80 id. 15.)

*Samuel V. Speyer* for respondent. If the trust is invalid as to Sarah A. Rogers, it is valid as to the other beneficiaries. (*Post* v. *Hover*, 33 N. Y. 593; *Manice* v. *Manice*, 43 id. 303, 384.) Sarah A. Rogers can be trustee for herself, and if she cannot, the court will not allow the trust to fail on that account. It will appoint another trustee. (*Brundy* v. *Brundy*, 38 N. Y. 410.)

FINCH, J. The principal questions argued before us are not in the case, and should not be considered.

The action was brought soon after the death of testator by his wife, as executrix, who had alone qualified. The complaint sought a construction of the will in two respects, about which alone it alleged that doubts had arisen. The first was whether the executrix was authorized to convert the estate, or any part thereof, into money before distribution; and the second was whether, during the minority of Beatrice, who was the youngest child living at testator's death, the executrix could sell any part of the property, and, in case of necessity, apply principal as well as income to her support and that of the minors. There was no suggestion of the invalidity of the trust for any reason, or that the testator died intestate as to the rest and residue of his estate, but assuming the validity of the trust, the questions raised were as to the authority of

the executrix under it. The relief asked was a construction of the will in the respects suggested and in any others which might be raised by the answers or properly brought before the court. The deceased left eleven children, six of whom were minors at his death, for whom a guardian *ad litem* was appointed, the adults appearing by counsel of their own. None of the answers raised any new questions, or suggested any difficulties to be solved beyond those stated in the complaint. Upon these pleadings the case went to trial. What then occurred we do not know, for this appeal stands alone upon the judgment record, no case having been made, and we are bound to assume that the only questions tried and decided were those raised by the pleadings. In October, 1869, or almost twenty years ago, judgment was rendered. In that judgment there is no trace of any determination founded upon a claim or allegation at any time made, that the trust was void. Outside of the formal facts the principal further finding was that, of the five persons named as executors and executrix of the will, Mrs. Rogers alone qualified. As she was beneficiary, to some extent, in the trust, the question raised was whether she could act also as trustee, and could sell and convey the property and appropriate not only income but principal. The court adjudged that she could, but since she was one of the beneficiaries took upon itself the execution of the trust, so far as her discretion was concerned, and sent it to a referee to ascertain and report what had been done with the personal estate and income received; what sum was needed for the widow and the support and education of the minors; and what was the net value of the estate and its income, and what part or parts could be sold or mortgaged. The judgment also authorized any of the parties upon the foot of the decree to apply for further instructions. All this assumed, as did the pleadings, the validity of the trusts, and determined only the authority of the executrix in the emergency which had occurred. The referee reported, and upon the filing of his report, and after hearing all parties, the court ordered that the executrix borrow, upon mortgage, $15,000 of the Mutual

Life Insurance Company of New York, and directed how much of it annually should be applied to the use of the widow, and how much to the support of the minors and their educa_ tion. The present appellant, George W. Rogers, now of full age, was then one of the minors, and reaped his share of the benefit of the loan. This order was made in February, 1870.

In August 1871, under another order of the court, the executrix borrowed, on bond and mortgage, of Fernando Yznaga $21,000, with which the previous loan was paid off and the surplus applied to the use of widow and minors as directed. In May 1872, she borrowed, under a similar order, $15,000 of Elizabeth Rapelye. In October 1873, she presented a further petition, showing that the real estate by reason of railroad improvements had increased in value $50,000, or more than the amount of the incumbrances; that taxes, interest, legal expenses, etc., added to medical bills for sickness in the family and the support and education of the minors, made it necessary to borrow an additional $10,000. A reference was ordered to ascertain the facts. Upon the coming in of the report and upon a stipulation signed by all the adult children, at that time eight in number, leaving but three minors, of whom George W. Rogers was one, and had reached the age of nineteen years, an order was made permitting such new loan. The record does not show whether it was obtained, though it probably was. Two years later, or in 1875, George W. Rogers became of full age. For four years thereafter, or until March 1879, he appears to have remained silent, but at that date an order was entered substituting, as his attorney in the case, Cyrus K. Corliss, in the room of the guardian *ad litem*, and thereupon, ten years after the decision was rendered, an undated paper was filed, signed by the new attorney, containing exceptions to the findings of the trial judge. This paper is the first trace of anything like an objection or exception along the line of the proceedings; and upon its basis it is now sought to overthrow and invalidate the trust, to break down with it the power of sale, and sweep away utterly about $50,000 of loans upon which this family have lived and this appellant has been

supported and educated. His adversary raises no question as to the regularity of the exceptions filed, but looks with sufficient cheerfulness upon the effort, to sign a stipulation waiving any undertaking on appeal to this court or any deposit of money in lieu thereof.

Under these circumstances, I think it our duty to refuse to consider any question beyond the single one raised and decided by the Special Term, and hold the appellant to a rigid and strict observance of the rules of law. All his exceptions, save one, should be disregarded, because too general, and taken to the whole of the conclusions of law specified by their number, some portions of which, at least, were beyond question correct, and what portions it was intended specifically to assail it is impossible to say ; and none of them can raise a question not involved in the case, but they must all stand upon the assumption that the trust was valid in its creation, leaving open only the inquiry whether it could be administered by Mrs. Rogers under the emergency which had arisen.

Two questions, and only two, are, therefore, presented by this appeal : First, whether Mrs. Rogers, being beneficiary, could also act as trustee ; and second, whether the orders directing the mortgages were legal and valid.

The will did not attempt to unite in the same person the office of trustee and the interest of beneficiary. Its terms associate with the executrix four other persons as executors and to the five, or such of them as should qualify, the residue was given in trust. The widow could act freely as to the beneficiaries other than herself, and as to herself four remained who could exercise the control and judgment improper for her. Trusts thus constituted are quite common, and although the trustees other than the beneficiary may die or decline to act, the court has power to supply their place, or, if need be, take upon itself the execution of the trust, so far as it ought not to be executed by the trustee who is also beneficiary. In this case the emergency happened. The four executors refused to qualify, and Mrs. Rogers became sole executrix, and that raised the question upon which the Special Term passed, not

of the validity of the trust in its creation, but how it could or should be executed in view of the emergency which had arisen. The court substituted its own discretion for that of the trustee. Through its own officers it inquired into the facts, and dictated in detail all that should be done. It might have appointed a new trustee, but having itself exercised all the discretion reposed anywhere, it might direct the mere formal act of giving the mortgage and distributing the money in the proportions dictated to Mrs. Rogers, for the amount going to her was fixed, and that set apart for the minors she could properly apply. We discover no error in the ruling in this respect.

The appellant further objects that there was no power under the will to mortgage the property, but, if anything, only a power to sell. It is to be observed that neither power was expressly given, but the whole legal estate was vested in the trustee, who might sell or mortgage it, though not in contravention of the trust. The mortgages directed were not in contravention of the trust, but in accordance with it, and to accomplish its performance. The will directed the income of the estate to be paid to the wife, so far as was necessary, for the support of herself and testator's mother, and the maintenance and education of the minors, and, if the whole income was insufficient, to apply so much of the principal as should be needed to make up the deficiency. The personal estate was small and swiftly exhausted. Resort to the real estate required either a sale or a mortgage, and the latter was wisely chosen, since the land was steadily increasing in value, and, by the choice, the benefit of that increase was preserved to those ultimately entitled in remainder.

In all this we find no error, but a prompt appeal by the widow, in the emergency which arose, to the aid and direction of the court, and a series of orders which were lawfully made and both prudent and just.

The judgment and orders should be affirmed, with costs.

All concur.

Ordered accordingly.