(8 App. Div. 197)

### MOAK v. MOAK et al.

(Supreme Court, Appellate Division, Third Department.  July 7, 1896.)

WILLS—CONSTRUCTION—QUANTITY OF ESTATE.

Testatrix devised a portion of her land to her grandson, "his heirs and assigns, forever." Another portion she devised to her granddaughter "during her natural life, and after her decease to her heirs and assigns, forever." *Held*, that the granddaughter, notwithstanding the use of the word "assigns" in the devise to her, took only a life estate.

Appeal from special term.

Action by Joseph E. Moak against John W. Moak and others. The complaint was dismissed, and plaintiff appeals. Reversed.

Argued before PARKER, P. J., and LANDON, HERRICK, MERWIN, and PUTNAM, JJ.

Clarence E. Holmes, for appellant.
John S. Pindar, for respondents.

PARKER, P. J.  Katherine Donaldson, by her last will and testament, which was admitted to probate in Schoharie county November 2, 1857, made the following devise: "Second. I give and bequeath to my granddaughter, Maria Moak (wife of Jacob M. Moak), all the remaining easterly part of my homestead farm and the westerly half of a six-acre lot lying on the north side of the highway; to have and to hold the same during her natural life, and after her decease to her heirs and assigns, forever"; and the single question presented by this appeal is whether Maria Moak, by such devise, took any greater interest than a life estate in the premises. If it were not for the insertion of the words "and assigns" after the words "to her heirs," in such devise, it is conceded by all parties that her interest would have been limited to a life estate; but the trial court held that by the use of the words "to her heirs and assigns" a grant of power to dispose of the remainder after her death was given her, and that, therefore, the estate which she took was equivalent to a fee in the lands. A cardinal rule of testamentary construction is that the plain intent of the testator, as evinced by the language of his will, must prevail, and such intention may be collected from the whole will taken together. Schouler, Wills, §§ 466, 468; Byrnes v. Stilwell, 103 N. Y. 458, 9 N. E. 241; Roe v. Vingut, 117 N. Y. 202–212, 22 N. E. 933.  "Where words are equivocal, that explanation shall be given which will preserve consistency in preference to one which will create inconsistency; and, if possible, some effect shall be given to each distinct provision, rather than that it shall be annihilated."  Chrystie v. Phyfe, 19 N. Y. 344, 348.  We are to seek, therefore, for the intent of the testatrix as manifested, not only in the particular lan-

guage which constitutes this devise, but also by any other language or provision of the will bearing upon this question, and when we shall have so ascertained the testatrix's intent we will have solved the question presented to us. By the first clause of the will· the testatrix gave to her grandson, Leroy Snyder, the other half of the lands mentioned in the devise under consideration, and in so doing made use of the following language: "First. I give and bequeath to my grandson, Leroy Snyder, forty-four acres of land; * * * to have and to hold the above-described premises to the said Leroy Snyder, his heirs and assigns, forever." Here is a plain devise of the fee in one-half of the lands, made by apt and appropriate language, to vest the absolute title and fee in him. She then proceeds by the second clause, above quoted, to dispose of the other half of such premises. She gives and bequeaths all such other half to her granddaughter, Maria Moak, "to have and to hold the same during her natural life, and after her decease to her heirs and assigns, forever." Can there be any doubt but that the testatrix intended to give a different estate or interest to Maria Moak from what she had given to Leroy Snyder? Is it at all probable that she used the apt and natural words to give Leroy a fee in one-half the lands, which she did use, and then, with the purpose and intent of giving Maria Moak the same interest in the other half, she used the unusual and very doubtful phrase which we find in the devise to her? Can we for a moment suppose that, with the fixed purpose and intent in her mind to give Maria Moak the absolute ownership, she would first declare that she was to "have and hold the same during her natural life," and then negative that limitation by the provision that "after her decease" she was to hold it to her assigns forever? Surely, she did not adopt such phraseology for the purpose of investing Maria Moak with the same interest that she had given to Leroy Snyder. What, then, was the interest she intended to give to Maria Moak. She had given Leroy Snyder the absolute ownership forever. Plainly she intended Maria Moak to have a different, and necessarily a less, interest; and the first phrase which she used, viz. "to have and to hold during her natural life," in my opinion, designates exactly what she intended her to have. They are the natural and apt words to use in bestowing a life estate upon her. They are utterly inapplicable and of no force whatever in order to bestow a fee, or any greater interest, in the premises. The interpretation for which the respondent contends requires us to omit entirely from this clause of the will the words, "during her natural life, and after her decease," and to give force only to the words, "to have and to hold the same, to her heirs and assigns, forever." We must drop out the words "and after her decease" as well as the words "during her natural life," for a phrase reading, "to have and to hold the same, and after her decease to her heirs and assigns," would hardly manifest an intent to vest in her absolute and unlimited ownership and power over the estate. It would indicate that the testatrix's idea was to have her hold possession until her decease, and that after that only were her assigns·or heirs to take. ·The idea of a life interest and possession seems to have been the

leading one in the testatrix's mind, and with that in view we are to inquire what effect is to be given to the words "her heirs and assigns." It is plain, I think, that the scrivener intended to give the absolute ownership to Maria Moak's heirs after her death, and that he used the words "and assigns" for that purpose. The idea in his mind was that after her death the estate was to go to her heirs and their assigns, and such, I think, should be the reading which we must give it. The phrase, "upon her death, to her heirs and assigns," is by no means unnaturally forced by such a construction. If it read "to her heirs or assigns," it might be different, but it could hardly go to both her heirs and her assigns, after her death, by any disposition she could make of it. I am so thoroughly convinced that the testatrix intended to give Maria Moak no more than a life estate that I think we are authorized to insert the word "their" before the word "assigns," and by so doing we give effect to all the language of the devise. Phillips v. Davies, 92 N. Y. 199.

The respondent relies upon the case of Goetz v. Ballou, 64 Hun, 490, 19 N. Y. Supp. 433, as authority for the construction which he claims should be given to this will. True, the phrase, "after her decease, to her heirs and assigns, forever," is there interpreted as he desires this to be, but the reason why it was so construed is in entire harmony with the reasoning and conclusion above adopted. In that case the intent of the testator was sought for, and it was concluded that by such phrase he intended to give the absolute ownership to his daughter Louise, therein named, because by a previous clause in the will he had, by the use of apt and appropriate words, given a life estate to another daughter, with remainder over to her heirs. Thus he had devised the premises to his daughter Agnes for life, and by the following language: "And from and immediately after her decease I give the same to her heirs or their assigns, forever,"—he had limited a remainder upon it. It was concluded that, had he intended to give to Louise the same kind of an estate that he had given to Agnes, with a similar remainder over, he would have used similar language, and that the purpose to give them different estates was plainly indicated by the change made in the language used. I conclude, therefore, that under the will in question Maria Moak took no more than a life estate in the premises, and that, therefore, the judgment dismissing plaintiff's complaint was erroneous, and should be reversed.

Judgment reversed, and new trial granted; costs to abide the event. All concur.