(27 Misc. Rep. 613.)

### In re CENTRAL TRUST CO.

### In re SOUTHACK'S WILL.

(Surrogate's Court, New York County. May, 1899.)

WILLS—POWER OF DISPOSITION IN LIFE TENANT.

A will devised the residuary estate of the testator to trustees, the income to be paid to his widow so long as she lived and remained unmarried, and on her remarriage or death to be equally distributed between the testator's seven children during their natural lives; and further provided: "And upon the death of each of my said children I give, devise, and bequeath one-seventh part of all my estate to his or her heirs, executors, administrators, and assigns forever." *Held*, that it was not the intention to give to the testator's children a power of disposition, and that the words "executors, administrators, and assigns" referred to the heirs of the children, and not to the children themselves.

Proceeding upon an accounting by the Central Trust Company as substituted trustee under the will of John W. Southack, deceased.

Butler, Notman, Joline & Mynderse, for petitioners.
King & Jessup, for respondent.

VARNUM, S. This is a matter which was not disposed of by Surrogate ARNOLD, and which has been reargued before me. Decedent gave his residuary estate to his executors in trust to pay the income thereof, with the exception of an annuity charged thereon, to his wife so long as she lived or remained his widow. Upon her remarriage or death, and in the event that the testator's seven chil-

dren should then be living, the trustees were directed to divide such income into seven parts, and to pay them to said children, respectively, during the terms of their natural lives. Then follows this clause: "And upon the death of each of my said children I give, devise, and bequeath one-seventh part of all my estate to his or her heirs, executors, administrators, and assigns, forever." All of said children survived their mother, and enjoyed the incomes bequeathed by the will. In 1898 a daughter died, leaving a will, whereunder a brother and sister were made the sole devisees. Upon an accounting by the substituted trustee of the testator the question arises whether the principal of the share, the income of which was received by the deceased daughter, passes to her devisees, or is to be distributed among her heirs and next of kin; that is to say, does the clause above quoted give, by implication, a power of disposition to each of the children of decedent? The words "heirs, executors, administrators, and assigns" are used twice again in the will. If any of the children should die before the death or remarriage of the testator's wife, and not leave issue, the trustees are to divide the income among the surviving children, and the shares so created are disposed of in the identical language above set forth. Again, in the event of the death of any child before the remarriage or decease of the mother, leaving issue, the proportionate share, the income of which would have been received by such child had it lived, is given absolutely to the issue, while the remaining shares are disposed of by the mooted clause in question. The rule that some force or meaning must, if possible, be given to every word used by the testator is invoked on behalf of the devisees of the deceased daughter. It is pointed out that the clause under consideration, by its repetition, reflects the mature deliberation which caused it to be employed, and that the use of the words "executors" and "assigns" shows conclusively that the children of the testator have the right either to devise or to deed their respective shares. But the pronounced emphasis laid on these two words carries with it a corresponding neglect of the other expressions of the testator, namely, "heirs," "administrators," and "upon the death," all of which repel the presumption that a power of disposition was created. It would therefore seem that the above rule relied on is inapplicable to sustain the contention of the devisees. The answer made to this reasoning is that, if the court cannot reconcile the terms made use of, the ones that are posterior in position must prevail, so that the word "heirs" can safely be disregarded. It is true that such a canon of interpretation exists, but it "is only a last resort, to be availed of where all efforts to reconcile the inconsistency by construction have failed." Van Nostrand v. Moore, 52 N. Y. 15, 20. Unless the language of a will unmistakably carries its meaning, the touchstone to be applied is the intention of the testator. It is only when that test fails, when a careful study of the context of the instrument is made in vain, that the court interprets the still doubtful meaning of the testator by the application of arbitrary rules and canons such as the one used in the Van Nostrand decision, supra. Can it be said that this is such a case? A cursory reading of the will certainly

conveys the impression that it was the desire of the decedent to have his estate retained in his family as long as possible, and that, accordingly, he so disposed of his property that his children's enjoyment thereof should be limited to life incomes. When the will is more carefully studied, this impression becomes intensified. The fact that equitable life estates are created, that the remainders over are expressly given in present words "after the death" of the children, that the testator makes provision in the event of the death of any of his children, both with and without issue,—all of these things cannot, in my opinion, be reconciled with an implied power of disposition. Whether or not the words "heirs, executors, administrators, and assigns" were employed because of the redundancy of the scrivener addicted to the use of old common-law expressions, the meaning of which the testator did not understand, and to which he was perfectly indifferent, the context of the will makes it manifest that it was the intention of the decedent, by the fifth clause of his will, to have an equitable distribution of his estate take place among the heirs and next of kin of his children. Much reliance is placed upon the case of Quested v. Michell, 24 Law J. Ch. 722. In that case the word "assigns," used by the testator, could only be predicated of the beneficiary of the life income. The context was barren of suggestion; and the court, with great reluctance, and "upon technical grounds," held that an implied power of disposition was given. In the case of Moak v. Moak, 8 App. Div. 197, 40 N. Y. Supp. 438, the granddaughter of testator was given a portion of his estate, "to have and to hold the same during her natural life, and after her decease to her heirs and assigns, forever." The court considers the context of the will, and adduces the conclusion that the intention of the testator was to give this devisee a life estate only. This being so, the rule laid down in the case of Phillips v. Davies, 92 N. Y. 199, is aptly called into play. It was there held that the clear intention of a testator will not be endangered by the use of unfortunate or inaccurate modes of expression, and that, in order to carry out such intention, the court may reject, supply, or transpose words to get at the correct meaning. Accordingly, the court in the Moak Case effectively carried out the purpose of decedent by inserting the word "their" before the word "assigns." It being my opinion that in the present case no power of disposition was intended to be created, I shall follow the rule laid down in the case last cited, and I therefore hold that the words "executors, administrators and assigns" refer to the heirs of the children, and not to the children themselves. The decree to be submitted should provide for distribution accordingly.

Decreed accordingly.