TRASK et al. v. STURGES et al.

(Supreme Court, Special Term, New York County. April 13, 1900.)

1. WILLS—ESTATE DEVISED.
    Where testator directed trustees to convert his property into cash and deposit the same with a trust company; the income to go to his grandchildren; the principal sum not to be withdrawn by them; the fund to be their property, and on their death to go to their devisees or heirs,—the grandchildren did not take a present estate of possession, but a mere beneficial interest.

2. TRUSTS—FAILURE—ABSENCE OF TRUSTEE.
    Where a will directed executors to deposit a fund with a trust company of their selection, the trust will not fail because no trustee who might take the legal title was named in the will.

3. WILLS—CONSTRUCTION.
    Where testator directed real estate to be sold as soon after his decease as, in the judgment of the trustees, seemed best, it will be deemed in equity to have been converted into personalty as of the date of testator's death.

4. SAME—RESTRAINT OF ALIENATION—PERPETUITY.
    A will directing a fund to be deposited with a trust company—the income to be paid to beneficiaries, and the principal to go to their devisees or heirs—is not invalid, as a perpetuity.

5. SAME.
    Where executors were given discretion to sell real estate within five years after testator's death, there was no such attempt to prohibit the exercise of the power of sale during such period as would invalidate the trust.

6. TRUSTEES—REMOVAL—PERSONAL GROUNDS.
    Trustees, whose duties are substantially those of executors possessing only a power of sale, will not be removed on the ground, solely, that they are objectionable to the parties in interest.

Action by Gustavus D. S. Trask and another, executors of Benjamin I. H. Trask, against Sadie Trask Sturges and others. Dismissed.

Stetson, Jennings & Russell (Henry L. Sprague and Edward R. Green, of counsel), for plaintiffs.

Wilder & Anderson (William R. Wilder and John Ewen, of counsel), for defendants.

GIEGERICH, J. The action is to compel the defendant Sadie Trask Sturges, as co-executrix with the plaintiffs of the last will and

testament of her grandfather Benjamin I. H. Trask, to join with the plaintiffs in exercising a discretionary power of sale contained in the third clause of such will, hereinafter set forth.   The said will, among other things, provides:

"Second. I hereby direct my said trustees to pay over to my beloved wife, Harriet N. Trask, during the period of her natural life, out of the entire personal estate of which I may die possessed, or which may thereafter accrue to it by reason of interest, rents, profits, sales, or from any and all source or sources, such sums of money in amount, and at such periods of time, as she may need or desire for her own use.   Third. I hereby direct that if, at the time of my death, I should have title and ownership of the vacant property located at Fifth avenue and Eighty-Second street, Fifth avenue and Eighty-Eighth street, Fifth avenue and One Hundred and Second street, and one lot on Fifth avenue between One Hundred and Twelfth and One Hundred and Thirteenth streets, New York City, which I now own, that my said trustees shall, as soon after my decease as may in their judgment seem fitting, dispose of the same at duly-advertised public sale, making satisfactory terms of payment, and deposit the cash proceeds of such sale with the Manhattan Bank Company to their joint credit as trustees, to be used as hereafter and heretofore provided.   Fourth. I hereby give and devise to my brother G. D. S. Trask, absolutely, the sum of seventy-five thousand dollars ($75,000), to be paid to him by my said trustees out of the proceeds of the sale of my real estate on Fifth avenue heretofore mentioned, or any other moneys on hand; and I hereby direct the payment as soon as my said trustees shall determine, in their judgment, the condition of the trust fund will permit it.   Sixth. After the death of my beloved wife, Harriet N. Trask, I hereby direct that my said trustees shall, in their discretion, within a period of five years after her death, sell and convert all my remaining estate, real, personal, and mixed, into cash, and shall deposit one-half the net proceeds of the same in a trust company, to be by them selected, at the best rate of interest obtainable, to be held as a trust fund by said trust company; the principal sum not to be withdrawn by either of the beneficiaries of this trust.   The fund is to be the property of my two granddaughters, Sadie Trask Sturges and Adele Sturges, in equal proportions, who may by will devise and bequeath the same, or, failing to make will, it shall go to their heirs at law.   Said trust company shall pay the interest on this trust fund so deposited quarterly in equal proportions to my said granddaughters, Sadie Trask Sturges and Adele Sturges.   The other half of my estate so converted as specified in this article shall be paid to my daughter Sarah S. S. Sturges, for her own separate use and benefit."

The widow of the testator died on July 29, 1898.   The above-mentioned legacy of $75,000 has been paid, and the executors have also, at the request of the daughter and granddaughters, paid the taxes and assessments and interest upon mortgages affecting all the real estate of which the testator died seised.   There being sufficient funds available in the personal estate for the purpose of making the payments referred to, and to meet the funeral and other expenses and debts of the testator, it has not been necessary to sell any part of the real estate.   There has been an accounting by the executors, and a decree settling the account and directing a further accounting has been made by the surrogate's court of the county of New York.   The daughter and granddaughters of the testator, resisting the demands of the plaintiffs, have put in an amended answer denying those allegations of the complaint which are substantially to the effect that the best interests of the estate require the sale of the real estate described in the third clause of the will, at auction, and interposed counterclaims (1) for the removal of the plaintiffs, and (2) for a construction of the will, respectively.   The reply denies the allegations respecting

the counterclaims, except that the will has not been judicially construed.

The plaintiffs insist that it is the duty of the executors to sell the Fifth avenue property under the power of sale contained in the will, without waiting for a rise in value, and that the court should direct their co-executrix to join with them in such sale, but my conclusion is to the contrary. Apart from the serious doubt as to whether the court may direct an executor or trustee to exercise a discretionary power, at the instance solely of the co-representatives, and against the protest of the parties beneficially interested, I find the facts to be contrary to the plaintiffs' assertion that the best interests of the estate require the sale of the property in suit at this time, and accordingly conclude that the complaint should be dismissed.

The more important question in the case is raised by the defendants' prayer for a construction of the will; the contention being that the trust imported by the sixth clause thereof is in fact no trust, and that the parties entitled to the fund may elect to take the real estate, generally, freed from the power of sale. So far as the argument is based upon the assumption that the granddaughters received a present estate in possession after the death of Mrs. Trask, which event, as above noted, has taken place, it is evident that the construction thus desired would defeat the intention of the testator, which was to provide for the beneficiaries' enjoyment of the income alone during their lives; the principal to be distributed at their death to their heirs at law, or to their appointees by will. He obviously intended to create a trust for this purpose, and in harmony with a cardinal rule of testamentary construction, that the plain intent of the testator, as evinced by the language of his will, must prevail, the words "the fund is to be the property" of the said beneficiaries should be read in the light of his intention as expressing a layman's conception of the beneficiaries' interest. Roe v. Vingut, 117 N. Y. 204, 22 N. E. 933; Moak v. Moak, 8 App. Div. 197, 40 N. Y. Supp. 438. It is objected that no trustee who might take the legal estate is disclosed, but, as I construe the paragraph in question, the trust company to be selected would be fully clothed as trustee when accepting the fund under the provisions of the will. From a careful reading of the will, I conclude that it was the intention of the testator that the trusts created for the benefit of the grandchildren should vest in interest immediately upon the death of Mrs. Trask. This view, it seems to me, finds ample support in numerous adjudications, among which it is only necessary to cite Manice v. Manice, 43 N. Y. 303; Robert v. Corning, 89 N. Y. 228; Hope v. Brewer, 136 N. Y. 126, 32 N. E. 558; Salisbury v. Slade, 160 N. Y. 278, 54 N. E. 741. The direction contained in the third clause of the will, for the sale of the real property therein mentioned, is imperative. The only latitude given to the executors is as to the time at which the sale may be made. And hence, under the equitable maxim that equity looks upon that as done which ought to be done, such real estate will be deemed to have been converted into personalty from the time of the testator's death. Fisher v. Banta, 66 N. Y. 468, 476; Lent v. Howard, 89 N. Y. 169, 177; Salisbury v. Slade, 160 N. Y. 278, 288, 54 N. E. 741. Since there has been a conversion of the

Fifth avenue property into personalty, the status of the property continues unchanged to the time of its actual sale, to be conducted in the manner directed by the last above mentioned clause of the will, viz. at auction. As to the remaining real estate, it is conceded by the defendants that there has been an equitable conversion thereof, from the time of the death of the testator's widow, by force of the peremptory directions contained in the sixth clause of the will. In this connection, it should be borne in mind that the scheme contemplated by the will is to convert the remainder of the estate, real and personal, into cash, within five years after the death of Mrs. Trask; and since the executors are required to deposit in a trust company, to be selected by them, the moneys thus to be realized, as well as all others which were in their hands at the time of her death, it is obvious that the testator intended that the executors should, upon the happening of such event, select a trust company, and not when the remaining estate has been converted into money, as contended by the defendants.

None of the cases cited by the defendants support the contention that the trusts for the benefit of the granddaughters will not vest in interest until an indefinite period after the death of the testator's widow. Such cases are very different in their facts from the case at bar, and therefore are not controlling. The authority of the executors to name a trust company which is to execute the trust seems to find support, by analogy, at least, in the case of Hartnett v. Wandell, 60 N. Y. 346. A trust company may be appointed executor of or trustee under a last will and testament (Laws 1887, c. 546, § 21, subd. 12); and section 27 of the same act, as amended by chapter 439 of the Laws of 1890, prescribes the investments which a trust company may make.

Even if I am in error as to the power of the executors to select a trust company, it is well settled by abundant authority that the court will not allow a trust to fail because the testator failed to name a trustee to execute the trust. Levy v. Levy, 33 N. Y. 97, 102; Sheldon v. Chappell, 47 Hun, 59; Rogers v. Rogers, 111 N. Y. 228, 238, 18 N. E. 636; Greenland v. Waddell, 116 N. Y. 234, 242, 22 N. E. 367; Cross v. Trust Co., 131 N. Y. 330, 350, 30 N. E. 125, 15 L. R. A. 606; Kirk v. Kirk, 137 N. Y. 510, 514, 515, 33 N. E. 552. And as there are definite beneficiaries, capable of coming into court and claiming the benefit of the bequest, the court will, if necessary, take upon itself the execution of the trust. Rogers v. Rogers, supra; Kirk v. Kirk, supra. The trust so created is, to my mind, one of those authorized by statute. Maitland v. Baldwin, 70 Hun, 267, 270, 24 N. Y. Supp. 29; Underwood v. Curtis, 127 N. Y. 523, 537, 28 N. E. 585; In re Brown, 154 N. Y. 313, 324, 48 N. E. 537. The trust company selected, or the trustee appointed, will become entitled, together with the daughter of the testator, to the possession and enjoyment, as tenants in common, of the property undisposed of, subject to the power of sale of the executors. Manice v. Manice, 43 N. Y. 303. The will discloses an intention to create two valid and distinct trusts,—one for each grandchild,—each of which is to end with the death of the beneficiary. Should such death occur before the sale of the property, the remainder

would immediately vest in the appointees of the deceased grand-daughter, or in her heirs, in case she neglected to make a will. The will does not disclose any intention upon the part of the testator that the interest of the beneficiaries arising under the will should be other-wise affected or superseded, and thus there is no possible contingency in which by the terms of the will the power to alienate the fund will be suspended for a longer period than the lives of the testator's widow and grandchildren. Hence the trust is not invalid, as contended, upon the ground of a suspension of the power of alienation for a period not measured by lives, or for more than two lives in being at the creation of the estate. Manice v. Manice, supra; Robert v. Corn-ing, 89 N. Y. 225; Allen v. Allen, 149 N. Y. 280, 43 N. E. 626. The discretion given to the executors to sell the remaining estate within the period of five years does not, in my opinion, import any purpose on the part of the testator to prohibit the exercise of the power of sale within such period, but is merely for the convenience of the executors and the protection of the property, and therefore there is no unlawful suspension of the power of alienation. Manice v. Manice, supra; Fisher v. Banta, supra; Stewart v. Hamilton, 37 Hun, 19; Underwood v. Curtis, 127 N. Y. 523, 28 N. E. 585; Hope v. Brewer, supra; Dee-gan v. Wade, 144 N. Y. 573, 39 N. E. 692; Salisbury v. Slade, supra. It might be claimed that the sale of the Fifth avenue property may be indefinitely postponed, but such contention is applicable to every case where a power similar to the one in question is given. As was said by Rapallo, J., for the court, in Manice v. Manice, 43 N. Y. 365, concerning the delay in making a partition of the estate:

"The effect of such delay upon the validity of the disposition depends * * * upon the solution of the * * * question * * * whether during that time the ownership is suspended, or whether the estates of the sons and of the trustees for the daughters are vested interests, and will become indefeasible on the death of the widow; for if the estates are thus vested the undivided shares of the sons will at the widow's death at once become alienable, and while the partition is being made the lives will be running, during which the suspension caused by the trusts for the daughters and their issue can lawfully continue, and no suspension of the power of alienation will be caused by delay in the partition. Should there be any unreasonable delay in making the partition, there can be no doubt that a court of equity would have power to enforce the performance by the trustees of their duties, and, if necessary, to appoint oth-ers to perform them."

As above noted, the grandchildren have not any estate in the fund. They are, to my mind, mere beneficiaries for life under the trust. Knox v. Jones, 47 N. Y. 389, 396. Hence section 132 of the real prop-erty law, giving a tenant for life or for years, who possesses a general power to devise, an absolute power of disposition, has no application. Cutting v. Cutting, 86 N. Y. 536; Crooke v. Kings Co., 97 N. Y. 421. Were the daughter alone interested in the proceeds of sale, she might have power to elect to take her share in the real property in its uncon-verted form, freed from the power. Prentice v. Janssen, 79 N. Y. 478; Mellen v. Mellen, 139 N. Y. 210, 34 N. E. 925. But, since the grand-children are not at once entitled to any part of the moneys to arise upon the sale of the real estate, they have no power to elect. Hetzel v. Barber, 69 N. Y. 1. Therefore there has not been a concurrence on the part of all beneficiaries in an election to take the land, which is

essential in order to take it out of the power of sale given by the will. McDonald v. O'Hara, 144 N. Y. 566, 39 N. E. 642.

With regard to the defendants' prayer that the plaintiffs be removed as trustees, I do not think that a case of misconduct is made out; and, upon the ground solely that the latter are personally obnoxious to the parties in interest, the authorities cited in support of the propriety of a removal do not apply to this case. The plaintiffs are not performing the duties of trustees, and the reasons found by the courts for a removal upon merely personal grounds would have application only to an actual trustee, and not to persons whose duties are substantially those of executors possessing a power of sale, and no more. This is not a case where the administration is obstructed, as in Quackenboss v. Southwick, 41 N. Y. 117.

There should be judgment for the dismissal of the complaint, and in favor of the plaintiffs upon the counterclaims, as indicated, without costs. Let the form of decision and judgment be settled upon notice.