In the Matter of JOHN J. REED, as Executor of MATHILDA A. STIER, Deceased, Appellant, against ROLLIN BROWNE et al., Constituting the State Tax Commission, Respondents.

Third Department, June 29, 1945.

*Max Rockmore* (*Sidney Meyers* of counsel), for appellant.

*Nathaniel L. Goldstein, Attorney-General* (*Wendell P. Brown, First Assistant Attorney-General, John C. Crary, Jr., Assistant Attorney-General* of counsel), for respondents.

BREWSTER, J. The questions which arise under this review are: (1) Under the will of Anthony Reichhardt did petitioner's testate and her sister, executrices of the will, become beneficiaries of a trust for the receipt and application of income from the trust estate, their right to the enforcement of the performance of which was nontransferable by assignment or otherwise under the provisions of section 15 of the Personal Property Law and section 103 of the Real Property Law; and (2) If such a trust was so created, whether upon the death of the sister of petitioner's testate the latter's beneficial interest merged with her legal title so as to become a legal life estate freed from the restrictions of the aforesaid statutes; and (3) Whether the "renunciation" by petitioner's testate of income from the aforesaid trust made on August 20, 1937, was a "transfer" in contravention of the aforesaid statutes.

Anthony Reichhardt died testate in 1902. His will was duly probated. By its second provision he devised certain real estate to his grandson. By its third provision he devised unto his wife a life estate in certain other real estate with remainder over to one of his daughters, Tillie Stier. By its fourth provision he gave, devised and bequeathed the rest, residue and remainder of his property to his wife and two daughters: "in trust nevertheless to pay over one-third of the net interest and income thereof" to the wife; another one-third thereof to one of his daughters, Emma, and the remainder one-third thereof to his other daughter, Tillie Stier, "for and during the term of the natural life of my said wife; and upon the further trust immediately after the death of my said wife, to pay over to my said daughter Emma Pfizenmayer and Tillie Stier out of my said residuary estate to each of them the sum of Fifty Thousand dollars; and upon the further trust to pay over the net interest and income of the remainder * * * to my said two daughters * * * for and during the terms of their respective lives; and upon the further trust immediately after the death of my said two daughters I give, devise and bequeath all of my said residuary estate * * * to my son-in-law Charles Pfizenmayer, in Trust nevertheless to pay over the whole of the said residuary estate, one-half thereof to the children of my daughter Emma * * * in equal shares, and the remaining one-half * * * to the children of my daughter Tillie Stier in equal shares. Should my * * * daughter Tillie Stier die without leaving any children then the said one-half share of my said residuary estate shall go to the children of my daughter Emma * * * in equal shares.

Should my * * * daughter Emma * * * die without leaving any children then the said one-half share of my said residuary estate shall go to the children of my daughter Tillie Stier in equal shares.'' Then followed a provision to the effect that if neither of his said daughters died leaving issue, one half of said residuary estate was given to the testator's heirs at law and the remaining one half to the heirs at law of his wife.

The testator's wife predeceased him. Thus as of the date of his death the fourth paragraph of his will may be said to have spoken as follows: $100,000 of the residuary estate became payable to testator's two daughters in equal shares; the net income of the remainder of said residuary estate became payable to the two daughters during their respective lives and upon their death or the death of the survivor thereof, the residuary estate passed to testator's son-in-law in trust to pay the whole of the same over, one half thereof to the children of each of said two daughters in equal shares and, if either daughter died without issue the whole of said residuary to the issue of the other daughter in equal shares, provided that if neither daughter died leaving issue then one half of said residuary to testator's heirs and one half to the heirs of his wife.

On March 4, 1935, one of the daughters, Emma, died leaving as her issue a son, Charles Anthony Fulton. Thereafter and on August 20, 1937, the surviving daughter, Tillie Stier, petitioner's testate, and her aforesaid nephew who resided at Nice, France, at said place, executed a written instrument. This recited the substance of the provisions of the will, the death of the daughter Emma, the age of the surviving daughter, Tillie Stier as being then in her seventy-seventh year and a widow without issue and incapable of bearing children, and the fact that Charles Anthony Fulton was the only child of testator's deceased daughter Emma; that the surviving daughter, Tillie Stier, was '' desirous of renouncing the income of said residuary estate, being mindful of the fact that the said income will pass to the person entitled to the next eventual estate, to-wit, Charles Anthony Fulton, who is the sole vested remainderman of said residuary estate.'' It further recited that the said Tillie Stier '' is independently wealthy and has no need of the income provided for her '' by the will of her said father. This instrument then provided that in consideration of its recitals and conditions therein contained it was '' agreed as follows: '' (1) that the said Tillie Stier '' does hereby irrevocably * * * relinquish and renounce all right to and in the income and interest of the residuary estate of Anthony Reichhardt,''

(2) that the said Charles Anthony Fulton released, remised and discharged the said Tillie Stier individually and as executrix and trustee under the will. of said decedent from or by reason of anything " arising out of any act, transaction, matter or thing whatsoever."

If the provisions of the fourth paragraph of the will established a valid trust then the statutes (Personal Property Law, §. 15; Real Property Law, § 103) rendered it unalterable as regards the right of petitioner's testate to the receipt of income, and respondents' determination under review must be confirmed. Contra, her aforesaid renunciation and nonreceipt of the income from the residuary during the years in question rendered it nontaxable as her income.

Was a valid express trust created? Testator. gave the residue to his two daughters stating it was " in trust nevertheless " to pay, the net income therefrom to themselves " for and during the terms of their respective lives "; and upon the termination of, that arrangement the residuary was given, in trust, to another trustee for final distribution of the corpus.

One of the prerequisites to the creation of a valid express trust is the appointment of a trustee whose entity is separate and distinct from the beneficiary, and if the grant or gift is such that the one chosen to act as trustee, and the named beneficiary, are identical, an essential to creation of a trust is lacking. (*Woodward* v. *James,* 115 N.. Y. 346; *Greene* v. *Greene et al.,* 125 N. Y. 506; *Weeks* v. *Frankel,* 197 N. Y. 304.)

But the trust if. valid in its inception will not fail because of a subsequent vacancy in the office of the trusteeship. If validly created it will carry through. The Supreme Court may remedy the breach by its appointment. (*Rankine* v. *Metzger,* 69 App. Div. 264, affd. 174 N. Y. 540; *Rogers* v. *Rogers,* 111 N. Y. 228; *Haendle* v. *Stewart,* 84 App. Div. 274.)

Under the will the trust title was inseparable. It vested in both daughters and ranged " over the whole estate for the purpose of its management and disposition " (*Woodward* v. *James, supra,* 357) and freighted also with dutiful regard for the protection of the remaindermen, and in this neither could act alone even as regards her own equitable beneficial interest. This, I think, sufficiently removes the incompatibility which might otherwise have resulted in a merger into legal life estates.

As to the eventuality of a time when, by the death of one of his daughters before the other, it would transpire that the essential entities would be identical, this evidently the testator did not envision. But did this oversight frustrate his expressed

design and plainly intended plan? While the court may not by construction or exercise of its power to appoint a successor trustee, and, in effectuation of the testamentary intent, create a trust where the intending founder has failed to give it legitimate birth, still the court's power is full when, lawfully in existence, the trust becomes crippled for lack of a directing head. (*Rankine* v. *Metzger, supra; Rogers* v. *Rogers, supra; Haendle* v. *Stewart, supra.*)

In *Losey* v. *Stanley* (147 N. Y. 560, 568, 569) doubt was expressed over whether a trust provision otherwise good need fall because of the settlor's failure to avoid a set up of identity in trustee and beneficiary. The question there left open is thought to have been answered in *Weeks* v. *Frankel* (*supra*). However, in the latter case the question before the court was whether the survivor trustee-beneficiary could exercise powers affecting the trust estate as a whole (not as confined only to his beneficial interest), and the holding was that he could. Thus the answer to the question as to whether he could deal with his own beneficial interest as a legal estate was not necessary to the decision, although it is true that in the opinion his interest was thus characterized. (*Weeks* v. *Frankel, supra,* 311.) While authority is ample that separation of personalities as to trustee and beneficiary is an essential to the creation of a valid trust, I find no clear holding by superior authority that, once it is lawfully established, a testamentary trust will fall simply because of a vacancy in the office of a trustee when occasioned by an event such as is here presented. The power of the court to appoint a successor trustee, and indeed, even to provide for a succession when called for by a supervenient incapacity due to settlor's oversight of a contingency, would seem to be called forth in order to effectuate the testamentary intent. And, it does not seem that a beneficiary may nullify that intent and destroy the founder's plan by an avoidance of or neglect to seek judicial intervention. (*Bronson* v. *Bronson,* 48 How. Prac. 481; *Royce et al.* v. *Adams,* 123 N. Y. 402; *Matter of Runk,* 200 N. Y. 447.)

Query arises whether the gift of the usufruct to the daughters " during the terms of their respective lives " carried a gift of the whole thereof to the survivor. I incline to the view that a fair construction of the testator's language is that by " respective lives " he meant, and that it may be held to mean, that the measure of " respective lives " applied to the application of the entire income. He did not otherwise provide. But in such case I do not think that even the almost certain event

of a time when identity of the trustee and named beneficiary would result, prevented its valid inception. It follows then that, being valid in the beginning, the subsequent misadventure of a vacancy in trusteeship was remediable, and the trust itself continued as indestructible and inalienable as against any act of the *cestuis que trust*, by force of statute law. (Personal Property Law, § 15; Real Property Law, § 103.) Accordingly, the renunciation made by petitioner's testate, which in reality effected a transfer of her beneficial interest, was unavailing and the determination appealed from should be confirmed.

HILL, P. J., HEFFERNAN and LAWRENCE, JJ., concur; FOSTER, J., concurs in the result.

Determination confirmed, with costs payable out of the estate. [See *post,* p. 913.]